THE STATE, SAMUEL EVANS, PROSECUTOR, v. JOHN Mc-
DERMOTT.

1. A person bitten by a dog may recover damages from the owner, where
a previous propensity to bite mankind is shown, if it also be shown
that the owner knew of such propensity.

2. An action can be maintained against the owner by the party injured,
upon evidence that the dog, with the knowledge of the owner, had a
mischievous propensity to bite, whether in anger or not.

3. A mischievous propensity in an animal, is a propensity from which
injury is the natural result.

On *certiorari.*

Argued at June Term, 1886, before Justices DIXON, REED
and PARKER.

For the prosecutor, *M. W. Niven.*

*Contra, W. D. Daly* and *James Flemming.*

The opinion of the court was delivered by

PARKER, J. An action was brought in the Hoboken Dis-
trict Court, by John McDermott against Samuel Evans, the
prosecutor, to recover damages occasioned by the bite of a dog.

It was proved that McDermott, at the time he was bitten,
was in the saloon kept by the prosecutor as a place of public
resort; that the prosecutor was the owner and possessor of
the dog; that in going from the billiard-room to the bar-room
of the saloon, McDermott met the dog in the passage-way;
that he put out his hand to motion the dog out of the passage-
way he was obstructing, when the dog growled and bit him
on the hand.

McDermott swore that about a month after he was bitten,
his hand broke out from the effect of the bite; that he became
nervous, lost sleep and suffered pain; that he employed a
physician, paid for medicines, lost two or three weeks' wages,
and was out of pocket in money about $25.

Evans v. McDermott.

Dr. Pinder, a practicing physician, swore that about the time McDermott's hand broke out, he was consulted professionally; that he made an examination of the hand and prescribed for the injury. He said that he found the skin broken, the hand considerably inflamed and swollen, and that it appeared to him to be a pretty bad hand. The witness added that hydrophobia might possibly result from such a wound, but that he did not apprehend such result in this case.

At the close of the plaintiff's evidence, the counsel for the defendant moved to non-suit, on the ground that it did not appear that the dog had bitten McDermott maliciously; and also on the ground that there was no proof that the dog had bitten other persons, except in play; or that the defendant had knowledge of the propensity of the dog to bite.

The judge refused to non-suit. In charging the jury, the judge said: "Some time ago, a girl was bitten by a dog in this state; the case was carried to the Supreme Court, and a judge there held the owner of the dog liable for an injury committed by the dog, if he had notice of his *mischievous propensity;* and this is the law which applies to this case."

Upon request to charge, the judge held, in substance, as he had ruled on the motion to non-suit.

The jury found for McDermott in the sum of $300 damages.

When the plaintiff rested, there was evidence of the propensity of the dog to bite, and that the defendant knew of it, before McDermott was bitten.

But it is said, on the part of the prosecutor, that although several persons had been bitten by the dog, of which he had information, yet it appeared that in every instance the biting occurred while the dog was in a playful mood; and it is argued that damages cannot be recovered where it is shown that the dog had a propensity to bite only in play; but that to justify a recovery, it must appear that the dog was in the habit of biting mankind while in an angry mood, actuated by a ferocious spirit.

This is not the law. An action can be maintained against the

owner by a party injured, upon evidence that a dog, with the knowledge of the owner, had a *mischievous propensity* to bite mankind, whether in anger or not. In either case, the person bitten would suffer injury. A mischievous propensity is a propensity from which injury is the natural result.

In the case of *Hudson* v. *Roberts*, reported in 6 *Exch.*, *p.* 699, it appears that the plaintiff was walking in the street, wearing a red handkerchief. The bull of the defendant, ordinarily gentle and quiet, and not known to have gored any person previously, was being driven along the street, when he attacked and gored the plaintiff. The defendant said that the red handkerchief caused it, and that he knew the bull would run at anything red. The plaintiff recovered. The bull had no hostile feeling against the man he injured, and no disposition to gore mankind, yet because of his mischievous propensity to rush at a red object, of which his owner knew, it was held that when he caused injury to the plaintiff, through that propensity, his owner should pay damages.

A domesticated bear may hug a man until his ribs be broken. This may be the mode adopted by the animal to manifest his affection; yet if he had on other occasions previously, shown his affection in that way, causing injury, and his owner knew of such propensity, the owner would have to pay damages caused by breaking the man's ribs. It is true that the bear is classed with animals *feræ naturæ*, and the presumption in such case would be that although domesticated, the animal had relapsed into his wild habits; yet, although the presumption on the question of *scienter* would be against the owner, he might be able to prove that the habit of embracing persons did not proceed from the savage nature of the bear, but under the influence of civilization from a cultivated affection.

But this proof would not avail the owner in a suit by a party embraced. Such a propensity would be held to be mischievous, because hurtful to those who were the objects of the bear's affection.

In the case of *Oaks* v. *Spaulding*, reported in 40 *Vt.* 347,

it appeared that Mrs. Oaks was driving cows home from pasture, when the ram of Spaulding attacked and injured her. It was shown that the ram had a propensity to butt mankind and that the defendant knew it, but it did not appear whether the previous buttings by the ram proceeded from an ugly disposition, or from the exuberence of a playful spirit; yet it was held that the defendant was liable. It did not cure the hurt nor assuage the pain of the woman to be told that the ram, when he butted her, was only in one of his accustomed sportive moods. It might have been fun for the ram, but it was hurtful to Mrs. Oaks. It was a mischievous propensity, whether proceeding from ugliness of temper or from good nature, which, if known to the owner of the ram, made him liable for damages resulting from such propensity.

There is no doubt that in cases of animals not naturally inclined to do mischief, a previous mischievous propensity must be shown, and the *scienter* clearly established. The gist of the action is, not the keeping of the animal, but the keeping with knowledge of the mischievous propensity, whether proceeding from a savage disposition or not.

The conclusion is that the plaintiff below, having shown by his proof that on several previous occasions the dog in question had bitten various persons on the hand, with the knowledge of the defendant, he was entitled to recover, even if the habit did not proceed from a ferocious nature, but was the result of a mischievous propensity.

In this instance (whatever may have been the circumstances attending the previous bitings of the dog), the bite was accompanied by a growl, while McDermott was in a place where he had a right to be, and when he was doing nothing except to motion the animal out of the passage-way, which he was obstructing.

The damages found by the jury are not excessive. In such a case they cannot be measured by mere expenditure of money to cure from the effects of the bite. Compensation should be made for the pain and the anxiety of mind which must necessarily follow the bite of a dog.

The judgment of the District Court is affirmed.