[Civ. No. 22336. Second Dist., Div. Three. Mar. 27, 1958.]

CHARLES RADOFF, Respondent, v. JOHN HUNTER et al., Appellants.

*Assigned by Chairman of Judicial Council.

Goebel & Donovan and Herbert J. Beck for Appellants.

Joseph W. Fairfield and Ethelyn F. Black for Respondent.

WOOD (Parker), J.—Action for damages for personal injuries resulting from being attacked and bitten by a dog. In a nonjury trial judgment was for plaintiff. Defendants appeal from the judgment.

Appellants contend that the evidence was insufficient to support the findings; and that the findings do not support the judgment.

On July 9, 1955, when plaintiff was injured, the defendant Mr. Yee was the owner of a pet store on Santa Monica Boulevard in Los Angeles. On and prior to that day, the defendant Mr. Hunter assisted Mr. Yee in operating the store. The defendants owned the dog herein referred to. Mr. Hunter

stayed at the store every day, including nighttime, because there had been attempted robberies at the nearby store of Sears, Roebuck and Company and someone had broken a window at the back of the pet store. Prior to July 9 a German shepherd dog, which had been trained as a watchdog, had been given to the pet store in order that the dog might be disposed of. The defendants kept the dog as a watchdog and they kept him outside at the rear (north end) of the store. The dog was chained, with a 15-foot chain, to a window bar on a store next to the rear of the pet store. At the rear of the pet store, and near its rear door, there were packing cases, trash cans, and an old counter which was about three feet high. A large packing crate, which was also there, was used as a shelter for the dog. The rear door of the store was used by customers. There was a parking area back of the store, which area was paved with asphalt. The dog weighed between 80 and 100 pounds, and was about 5½ feet tall when standing on his hind legs.

An automobile service department of Sears, Roebuck and Company is about 10 feet west of the side of the pet store. The 10-foot space is paved with asphalt and is used by Sears as a storage yard. There is a parking area at the rear (north end) of the service department, which area is paved with asphalt. The paved parking areas, and the paved 10-foot space between the pet store and the service department, are level. At the boundary line between the parking area of the pet store and the 10-foot space, there is a curb which is about 6 inches high and 6 inches wide.

On said July 9, about 10 a. m., plaintiff Mr. Radoff drove his automobile to the automobile service department of Sears for the purpose of having the automobile battery charged. Someone at that department told him to park his automobile at the rear (north end) of the department for that particular service. Plaintiff parked his automobile at the place indicated which was a parking space about 10 feet from the parking area back of the pet store. The service man, after suggesting that plaintiff needed a new cable for the battery, removed the used cable and dropped it. Plaintiff took the cable to a trash can which was at the rear of the pet store and about 40 to 50 feet from the automobile. In going to the trash can he stepped over the curb onto the parking area back of the pet store. He dropped the cable in the can and started back to the automobile. He testified that after he had gone about three steps something snapped his leg, and he fell on his face and

wrist; as he rolled farther away, he looked back and saw that it was a dog that had grabbed his leg; at that time the dog was growling, baring his teeth, and trying to get to the plaintiff. Plaintiff did not hear any noise or see anything before the dog bit him. He was bitten in the back of the upper part of his leg. There was no sign on the pet store premises indicating that a dog was at the rear of the store. Neither of the defendants knew that plaintiff was on the pet store premises until after the plaintiff had been injured.

Mr. Hunter testified, at the trial, that after the incident here involved, he learned that an old man (not plaintiff) had been teasing the dog. Mr. Hunter testified, at the time his deposition was taken, that prior to the incident here involved, an old man in the neighborhood teased the dog.

The court found that plaintiff entered defendants' premises without the knowledge, consent or invitation of defendants, express or implied, and insofar as the defendants were concerned, plaintiff was a trespasser; that the defendants should have anticipated an attack by the dog; that with such knowledge defendants failed to exercise reasonable care to warn those who entered defendants' parking lot of the condition and risk involved.

Appellants argue that the finding that they should have anticipated an attack by the dog is not supported by the evidence. There was evidence that defendants knew that the German shepherd or police dog had been trained as a watchdog; they kept him as a watchdog and kept him chained, with a 15-foot chain, outside the store and near the rear door; the dog weighed between 80 and 100 pounds, and was about 5½ feet tall when standing on his hind legs; customers used the rear door of the pet store. Also, there was evidence that defendant Hunter knew, before plaintiff was injured, that the dog had been teased by an old man and that when ''an older person came around'' the dog, the dog acted as if the person were the old man who had teased him. In *Frederickson* v. *Kepner*, 82 Cal.App.2d 905 [187 P.2d 800], it was said at pages 908 and 909: ''The (a) vicious propensities and dangerous character of a dog and (b) knowledge thereof by his owner may be inferred from evidence that the dog was kept (1) tied (2) as a watchdog and also (3) from his size and breed. [Citations.] Applying the foregoing rules to the facts in the instant case it is apparent that the jury could have inferred from the foregoing evidence that, since defendant

kept a German police dog of 75 pounds weight tied on his premises as a watchdog, and permitted the dog to be unfettered only in the evenings and when accompanied by someone, (a) the dog had a dangerous nature, and (b) defendant had knowledge of the dangerous character of the animal. Hence, since there was direct evidence that the dog caused injury to plaintiff, defendant would be liable to plaintiff for the damage resulting and it was error for the trial court to grant the motion for a nonsuit.'' ▇▇▇ The evidence was sufficient to support the finding that defendants should have anticipated an attack by the dog.

▇▇▇ Appellants argue further that since plaintiff was a trespasser, the only duty they owed to him was to refrain from wilful or wanton injury. In *Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91 [219 P.2d 73], it was said at pages 96 and 97 : '' [W]hile there are many cases holding that a land owner is only required to refrain from inflicting wanton or wilful injuries on a trespasser or licensee [citation], there are many cases also holding that after 'a trespasser is seen in a position of danger, due care must be exercised to avoid injuring him, and it is negligence not to do so.' [Citation.] This duty of reasonable care not only extends to situations where the land owner knows of a trespasser's presence, but also to situations where he should know of his presence. ▇▇▇ Thus, the Restatement of Torts (vol. 2, § 336) declares that if the possessor of land does not know of a trespasser's presence, but 'from facts known to him should know or believe that another is or may be' trespassing, he is 'subject to liability for bodily harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety.' (Many California cases are cited as being in accord in the California annotation to this section.) ▇▇▇ Many courts, in imposing this duty of reasonable care towards trespassers and licensees, have drawn a distinction between active and passive negligence, and have limited the reasonable care test to overt acts of negligence. [Citation.] California has quite clearly adopted this distinction and imposed a duty to exercise reasonable care towards known licensees or trespassers so far as active operations are concerned. In the well-reasoned case of *Oettinger* v. *Stewart*, 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221], cases to the contrary were expressly overruled.''

▇▇▇ In the present case the defendants did not know of the presence of plaintiff on the pet store premises until after

plaintiff was injured. The court could reasonably infer, however, from the fact that the pet store was located near a large shopping and parking area that the defendants should have believed or anticipated that persons might walk or trespass within the 15-foot radius where the watchdog was allowed to range, and where at times he was concealed from view in his shelter or behind crates, trash cans or the counter. In *Northon* v. *Schultz,* 130 Cal.App.2d 488 [279 P.2d 103], a visitor in a home was injured when a dog therein ran against the back of the visitor's legs and caused her to fall. In that case the court indicated that the owner's conduct in allowing the dog to run against the visitor was "active conduct." It was said therein (p. 490) that since the decision in *Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221], it is settled that a landowner owes to a licensee the duty of not injuring him by "active conduct." It was also said in that case (p. 489): "The keeper of a dog who has knowledge that it possesses traits which may make it a source of danger to other persons is subject to an absolute liability to another who is injured by the dog as a result of such traits." In the present case the keeping of the trained watchdog, under conditions where at times he was concealed from view and where no warning was given of his presence, was similar to maintaining a trap whereby invitees, licensees or trespassers might be injured.

The evidence was sufficient to support the findings, and the findings support the judgment.

The judgment is affirmed.

Vallée, J., concurred.

SHINN, P. J.—I concur in the judgment. There was no active negligence of the defendants. They merely created a dangerous condition for intruders in the portion of the premises set aside for the dog, and if he had been in sight all the time, trespassers upon his domain would have had only themselves to blame if he chased them away, even by the use of extreme measures. Any grown-up should have gumption enough to stay out of the reach of a chained watchdog, especially one as faithful and efficient as a well-trained German shepherd. But the defendants' dog had a large packing crate in which to nap during the daytime, when his presence might go unnoticed. He would then constitute a pitfall for the unwary. Defendants should have maintained a warning

sign. Their failure to do so rendered them liable for injuries, even to trespassers who were unaware of the presence of the dog. For this reason, alone, I agree there was a liability to plaintiff.

A petition for a rehearing was denied April 15, 1958, and appellants' petition for a hearing by the Supreme Court was denied May 21, 1958. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.