PETER DeROBERTIS, AN INFANT BY HIS GUARDIAN AD LITEM CAROLYN DeROBERTIS AND VITO DeROBERTIS, INDIVID-UALLY, PLAINTIFFS-RESPONDENTS, v. JOSEPH RANDAZZO, JR., INDIVIDUALLY AND T/A RANDY'S AUTO BODY, DE-FENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT, v. BRUCE McCARTHY, THIRD-PARTY DEFENDANT.

Argued January 24, 1983—Decided July 25, 1983.

*Edward G. O'Byrne* argued the cause for appellant.

*William J. Pollinger* argued the cause for Peter DeRobertis, etc. (*DeLorenzo & Pollinger,* attorneys).

*Jack A. Maloof* argued the cause for respondent Vito DeRobertis.

The opinion of the Court was delivered by

POLLOCK, J.

The principal issue in this case is the liability of a dog owner to an infant plaintiff bitten by the owner's dog. At trial the jury returned a verdict for the plaintiffs, and the Appellate Division, in an unreported opinion, affirmed. A factual issue existed at the trial, however, as to whether the infant plaintiff was lawfully on the property of the owner, but the trial court did not submit that question to the jury. The omission is important because the "dog-bite" statute, *N.J.S.A.* 4:19–16, imposes absolute liability on an owner whose dog bites someone who is "lawfully on or in a private place, including the property of the owner of the dog." If the plaintiff was a trespasser, he

was not lawfully on the property, and liability should not be determined under the statute but according to common-law principles.

We reverse the judgment in favor of the plaintiffs and remand the case for a new trial.

I

Five-year-old Peter DeRobertis was on the property of defendant, Joseph Randazzo, Jr., on June 21, 1977, when Randazzo's dog bit Peter on the head, causing serious injury. Randazzo owned an auto body shop, Randy's Auto Body, and contracted some of his towing work to Peter's father, Vito DeRobertis. Because Peter's mother, Carolyn DeRobertis, worked, Mr. DeRobertis often took Peter to Randazzo's shop. Apparently Peter roamed throughout the shop and often performed small tasks. Randazzo kept a pet German Shepherd, Pollo, chained to a doghouse adjacent to the rear of the body shop.

On the day of the accident, Mr. DeRobertis had allowed Peter to accompany Bruce McCarthy, one of Randazzo's employees, on an errand. Before their return, Peter's father was called away on a towing job unrelated to Randazzo's business. McCarthy later left Peter at the shop, where he eventually found Dan Murphy, another employee, painting a car. From the area in which Murphy was working, it was possible to see and hear Pollo. Randazzo, who was not on the premises on the day of the accident, did not recall having warned Peter about the dog or that Pollo had ever bitten anyone. Although Peter's father had warned him to stay away from the dog, Peter had been in the area near Pollo with his father. On hearing Pollo bark, Peter approached and patted him on the nose. When Peter bent over to tie his shoelace, Pollo bit him, causing lacerations. Peter was taken to the hospital, where he remained for five days following the performance of plastic surgery. As a result of the accident, Peter suffered a scar on his scalp and experienced nightmares for about a year.

An air of casualness permeated the proceedings from the filing of the complaint through the jury verdict. In the complaint, Carolyn DeRobertis sued Randazzo on Peter's behalf, and Vito DeRobertis sued for reimbursement of medical expenses. The complaint, however, does not mention *N.J.S.A.* 4:19–16, which imposes absolute liability on an owner whose dog bites a person who is lawfully on the owner's premises. Nor does the complaint allege that Randazzo is absolutely liable under common-law principles as the owner of a dog with known dangerous propensities. Instead, the complaint is framed as a simple negligence action. The answer, which denies that Peter was an invitee, squarely places in issue his status on the property. In addition, the answer includes a counterclaim against Vito and a third party complaint against McCarthy for negligent supervision of Peter. No pretrial conference was conducted, and plaintiffs had not answered interrogatories by the commencement of the trial.

At the conclusion of a three-day trial, the court dismissed the third party action against McCarthy, and that matter is not before us. Somewhere in the course of the trial, the statute emerged as a possible basis of liability. The lack of clarity in the underlying theory of the action surfaced again, however, in the charge to the jury.

At one point in the charge, the court read aloud the entire statute. Then, despite the statutory requirement that a person must be on the premises by invitation, express or implied, the court instructed the jury that the status of the infant on the property was "of no moment insofar as the infant's possible recovery is concerned." In the next paragraph, the charge, without so stating, appears to be based on common-law principles of strict liability. That portion of the charge instructed the jury:

> This is a situation where a person is injured by the actions of the dog with vicious propensities, known to its keeper, while the injured person is on the premises of the keeper of the dog. It is not necessary in order to recover for the

injuries to show that he was on the premises either by invitation, by consent or acquiescence.

Liability would be imposed upon the keeper of the dog by reason of his knowledge of the dog's vicious propensities. The mere fact that the injured person was not invited or even if the infant be a trespasser on the premises at the time of the injury does not defeat the cause of action.

The trial court concluded this part of the charge by stating, "[w]hat I have just indicated to you is the concept of the statutory obligation . . . ."

Defense counsel objected to that part of the charge stating that even if the infant were a trespasser, he could recover under the statute. Without correcting the charge, however, the court merely noted the objection.

The court submitted the matter to the jury on special interrogatories, only the first two of which pertained to liability under the statute. Those questions inquired whether Randazzo kept a dog and whether the dog bit Peter. The court further instructed the jury not to answer the remaining questions on liability if it found that Pollo had bitten Peter. Among other things, the remaining questions asked whether the dog was dangerous and the owner knew of its "harmful propensities." Continuing the error in the charge, the court did not ask the jury to determine whether Peter was lawfully on Randazzo's property.

After finding that Pollo had bitten Peter, the jury awarded Peter $40,000, apportioning liability for damages between Randazzo and Vito DeRobertis at 80% and 20%, respectively. Although Peter's medical bills were only $2,516.30, the jury awarded nearly twice that amount, $5,000, to Vito. The trial court molded the verdict in favor of Vito to conform to the actual damages.

Randazzo moved for *remittitur* of the verdict, and the trial judge granted the motion, reducing the award to $25,000. The court found that the verdict was so disproportionate to the injury that it would be manifestly unjust to sustain the award. In particular, the court noted that Peter's hair had regrown and

that no scar was visible. The court noted further that the nightmares had disappeared and nothing indicated that they would return. The court concluded, "[n]o permanent disability or injury resulted from the incident which could justify a verdict of this size."

On appeal, the Appellate Division approved the charge, holding that the infant trespasser rule is incorporated into the statute and, therefore, that the child's status would not bar recovery. The Appellate Division further reversed the *remittitur*, reinstating the original jury verdict of $40,000.

Following the entry of the judgment of the Appellate Division, plaintiff sought and obtained an order directing the sale of Randazzo's home to satisfy the judgment. On filing his petition for certification, Randazzo pledged his house as security for the judgment, and we stayed execution pending resolution of this appeal.

Because we believe that the lower courts misunderstood the relationship between the dog-bite statute and the infant trespasser rule, we reverse the judgment and remand the case for a new trial.

## II

The early common law distinguished between wild and domesticated animals for purposes of imposing liability on their owners. Owners of fierce or wild animals were absolutely liable for harm caused to others. However, owners of domesticated animals, such as dogs, were liable only if they had scienter; that is, the owners were liable only if they knew of the animal's dangerous or mischievous propensities. *Emmons v. Stevane,* 77 *N.J.L.* 570, 572 (E. & A.1909) (reversal of directed verdict for owner of dog who knew dog was vicious). People can be injured by playful, as well as mean, dogs. *Jannuzzelli v. Wilkens,* 158 *N.J.Super.* 36, 41–42 (App.Div.1978); *Evans v. McDermott,* 49 *N.J.L.* 163, 164 (Sup.Ct.1886); *see* W. Prosser, *The Law of Torts* § 76 at 501 (4th ed. 1971). Generally, upon a showing of

scienter, an owner was held liable even if a plaintiff could not show the owner to be negligent in his control of the dog. *See Tanga v. Tanga,* 94 *N.J.Super.* 5, 8 (App.Div.1967) (reversal of jury verdict for dog owner where trial court refused to charge that the statute created strict liability); *Emmons, supra. But see DeGray v. Murray,* 69 *N.J.L.* 458 (Sup.Ct.1903) (defendant who exercised due care in controlling dog not liable for dog having bitten plaintiff, even if defendant knew dog to be vicious). In other instances, owners were liable if they failed to use due care in controlling their animals. *See Angus v. Radin,* 5 *N.J.L.* 957, 958–59 (Sup.Ct.1820); W. Prosser, *The Law of Torts* § 76 at 502 (4th ed. 1971).

With the enactment of *N.J.S.A.* 4:19–16 in 1933, however, even owners without scienter became absolutely liable in certain situations. The statute reads:

> The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
>
> For the purpose of this section, a person is lawfully upon the private property of such owner when he is on the property in the performance of any duty imposed upon him by the laws of this state or the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner thereof.

For liability to attach under the statute, three elements must be proven. First, the defendant must be the owner of the dog. Second, the dog must have bitten the injured party. Finally, the bite must occur "while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog."

The Appellate Division has decided several cases treating the elements of ownership and injury. In *Gross v. Dunham,* 91 *N.J.Super.* 519 (1966), the court interpreted the statute to allow recovery for all injuries sustained by the victim of a dog bite even though some of the damage resulted from the dog's knocking the plaintiff to the ground. But the statute does not cover

the situation in which an individual suffers injuries from being knocked down by a dog, but is never bitten. *Jannuzzelli v. Wilkens,* 158 *N.J.Super.* 36 (1978) (although owner not liable under statute for scratches caused by chained dog, common law absolute liability imposed because he knew of dog's tendency to jump and scratch); *Hayes v. Mongiovi,* 121 *N.J.Super.* 272 (Dist.Ct.1972), *aff'd,* 125 *N.J.Super.* 413 (1973) (owner not liable under statute or common law where Great Dane not known to be vicious broke loose from leash and knocked down plaintiff). In *Mascola v. Mascola,* 168 *N.J.Super.* 122 (1979), parents of the infant plaintiff who were caring for a Doberman Pincher left in their custody by plaintiff's uncle were held not to be "owners," and, therefore, not liable under the statute when the dog, while tied up, bit the plaintiff.

With respect to the requirement of lawful presence on the owner's property, the statute states that "a person is lawfully upon the private property of such owner . . . when he is on such property upon the invitation, express or implied, of the owner thereof." Although the word "invitation" is not defined, the legislative purpose would best be served by construing the term broadly to include all those who have express or implied permission to be on the owner's property. That is, those lawfully on the property include both invitees and licensees (including social guests), but not trespassers. An express invitation is not necessary to create a license; an implied invitation will suffice. *Snyder v. I. Jay Realty Co.,* 30 *N.J.* 303, 312 (1959). Anyone whose presence is expressly or impliedly permitted on the property should be entitled to the protection of the statute. Furthermore, the permission extends to all areas that the individual may reasonably believe to be included within its scope. *See Handleman v. Cox,* 39 *N.J.* 95, 110 (1963) (invitation extends to all parts of property to which invitation may reasonably take an invitee); W. Prosser, *The Law of Torts* § 61 at 391–92 (4th ed. 1971).

■ In summary, under the statute a plaintiff must prove that he was lawfully on the premises at the time of the dog bite. That is, he must demonstrate that he had express or implied permission to be on the property and that he could reasonably believe the scope of that permission extended to the place of the accident. Here, the trial court erred in not charging the jury that, to impose liability on the dog owner under the statute, it was necessary to find that the invitation extended to the area where the dog was chained. It remains to consider the rights of the parties under common-law principles, which would govern if the plaintiff did not have the right to be near the chained dog.

### III

For absolute liability to attach at common law, a plaintiff was obliged to prove that the dog was vicious and that the owner knew it. *Smith v. Donohue,* 49 *N.J.L.* 548, 549 (Sup.Ct.1887). To avoid liability, sometimes owners would plead ignorance of their dog's dangerous or mischievous propensities. *See, e.g., DeGray v. Murray, supra; Smith v. Donohue, supra.* Actual knowledge, however, should not be necessary; it should suffice if the owner had reason to know of the dog's abnormally dangerous characteristics. *Restatement (Second) of Torts* § 509 (1977). When a reasonable owner would know of the likelihood of a dog's tendency to harm, whether by biting, scratching, or jumping, the plaintiff should not be obliged to prove actual knowledge. If an owner has been warned of the threat posed by his dog, it should not be necessary to prove that the owner had actual knowledge that the dog had, in fact, harmed another. A dog is not necessarily entitled to its first bite.

■ A plaintiff who can prove that an owner knew of his dog's dangerous propensities is not restricted to a negligence action; that plaintiff may have a cause of action predicated on common-law absolute liability. *See, e.g., Barber v. Hochstrasser,* 136 *N.J.L.* 76, 79 (Sup.Ct.1947) (owner, but not her husband, was liable for injuries caused by dog that knocked down plain-

tiff); *Dranow v. Kolmar,* 92 *N.J.L.* 114, 116 (Sup.Ct.1918) (jury verdict for owner reversed because trial court refused to charge that owner would be liable if he knew dog would bite in play); *Gladstone v. Brinkhurst,* 70 *N.J.L.* 130, 131 (Sup.Ct.1903) (owner of St. Bernard known to bite was strictly liable when dog bit seven-year-old boy); *Roehers v. Remhoff,* 55 *N.J.L.* 475, 478 (Sup.Ct.1893) (owner of known vicious dog strictly liable where dog bite occurred on the sidewalk); *Evans v. McDermott,* 49 *N.J.L.* at 167 (owner of dog with known mischievous propensities liable when dog bit plaintiff in owner's saloon); *Perkins v. Mossman,* 44 *N.J.L.* 579 (Sup.Ct.1882) (owner who knew her dog had shown a vicious disposition twice before strictly liable for bite to plaintiff); *Eberling v. Mutillod,* 90 *N.J.L.* 478 (E. & A.1917) (owner of St. Bernard known to be vicious absolutely liable to sixteen-year-old newsboy, even if he was a trespasser). Like the owner of a wild animal, the owner of a known vicious dog is liable even when careful in restraining the dog. *Emmons v. Stevane, supra,* 77 *N.J.L.* at 572.

In an anomalous decision, *DeGray v. Murray, supra,* the former Supreme Court declined to impose absolute liability on the owner, although he knew his dog was vicious. Instead, the Court ruled that an owner who uses due care to confine his dog indoors is not liable when it breaks loose, runs into the street, and bites a passerby. The *DeGray* decision has been ignored in some cases, see, *e.g., Barber v. Hochstrasser, supra,* 136 *N.J.L.* at 79, and criticized in others, see, *e.g., Tanga v. Tanga, supra,* 94 *N.J.Super.* at 9–10, and *Jannuzzelli v. Wilkens, supra,* 158 *N.J. Super.* at 43–44. But see *Backhofen v. Blumetti,* 1 *N.J.Misc.* 11 (Sup.Ct.1923). One attempt to reconcile *DeGray* with other New Jersey cases was predicated on imposing absolute liability where the dog was confined and requiring proof of negligence when it broke loose. *Jannuzzelli v. Wilkens, supra,* 158 *N.J.Super.* at 45; *Eberling v. Mutillod, supra,* 90 *N.J.L.* at 480. Rather than continuing to try to reconcile *DeGray* with the established law, we believe it is more straightforward to recognize it as an aberration. *See Tanga v. Tanga, supra,* 94 *N.J.Super.* at 9.

Accordingly, we overrule *DeGray v. Murray* to the extent it rejects absolute liability as the basis of recovery against owners of known vicious dogs.

Our holding that owners with scienter are subject to absolute liability is consistent with the majority rule in other jurisdictions. See, *e.g., Jones v. Manhart,* 120 *Ariz.* 338, 585 *P.2d* 1250 (1978) (imposing absolute liability when licensee was bitten by a dog); *Strange v. Stovall,* 261 *Ark.* 53, 546 *S.W.2d* 421 (1977) (absolute liability imposed, but defense of comparative negligence allowed); *Swerdfeger v. Krueger,* 145 *Colo.* 180, 358 *P.2d* 479 (1961) (absolute liability allowed with defense of contributory negligence where infant trespasser was bitten by defendant's dog); *Arnold v. Laird,* 94 *Wash.2d* 867, 621 *P.2d* 138 (1980) (calling for absolute liability with no defense of contributory negligence); *Annot.,* 64 *A.L.R.3d* 1039 (1975); *Restatement (Second) of Torts* § 514 (1977) (imposing absolute liability unless the victim is a trespasser). Some jurisdictions, however, hold the owner liable only if he has been negligent. See, *e.g., Radoff v. Hunter,* 158 *Cal.App.2d* 770, 323 *P.2d* 202 (1958); *Bramble v. Thompson,* 264 *Md.* 518, 287 *A.2d* 265 (1972).

Although owners of known vicious dogs should be absolutely liable even to trespassers, the conduct of the victim remains relevant to the determination of liability. Not all trespassers are alike; "trespasser" includes both the burglar and the uninvited infant. In analyzing the relative rights of the dog owner and the "trespasser," we believe it is important to look beneath the label and at the realities of their relationship. Some trespassers, such as those who enter premises for criminal purposes, ordinarily should have no claim upon an owner.

With respect to more innocent trespassers, as well as those lawfully on the property, contributory negligence may still bar recovery. See *Foy v. Dayko,* 82 *N.J.Super.* 8 (App.Div.1964) (holding, before the enactment of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1, that contributory negligence remains a defense under the dog-bite statute); *Eberling v. Mutillod, supra,*

90 *N.J.L.* at 482. For example, one who beats or torments a dog has no call upon the owner if, in self-defense, the dog bites back. *Dranow v. Kolmar,* 92 *N.J.L.* at 116–17. However, a child under the age of seven, such as Peter, is rebuttably presumed to be incapable of negligence. *Bush v. N.J. & N.Y. Transit Co., Inc.,* 30 *N.J.* 345, 358 (1959).

■ The owner should bear the burden of proving a plaintiff's contributory negligence. *Cf. Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548, 563 (1980) (holding in a products liability case that the Comparative Negligence Act is applicable to strict liability causes, but requiring defendant to prove plaintiff's "unreasonable and voluntary exposure to a known risk"). Absent such a showing, an owner with scienter is absolutely liable. Under the comparative negligence statute, *N.J.S.A.* 2A:15–5.1, if the plaintiff's negligence was the primary cause of the injury, then recovery is barred. On the other hand, if it is found that his negligence is not greater than the negligence of the combined negligence of the persons against whom recovery is sought, he can recover with an appropriate reduction in the award. *Id.*

■ If either the dog is not vicious or the owner does not know of its vicious propensities, then negligence, not absolute liability, applies. Because absolute liability is premised on the notion that a greater responsibility is owed to the public by those who knowingly harbor dangerous animals, the rationale for absolute liability disappears in the absence of scienter. In those cases, the owner should not be liable unless a plaintiff can prove the defendant's negligence in failing to prevent the injury. *See Arnold v. Laird, supra,* 621 *P.2d* at 140–41; *Restatement (Second) of Torts* § 518 (1977). The duty owed is "commensurate with the danger to others which will follow" if the dog escaped from the owner's control. *DeGray v. Murray, supra,* 69 *N.J.L.* at 461; *accord Restatement (Second) of Torts* § 518 comment f (1977).

It remains to consider the effect of Peter's status as a trespasser upon his cause of action in negligence. Although a possessor of land generally is not obliged to keep his land safe for trespassers, an exception exists for those trespassers who are infants. Because children may lack sufficient discretion for their own safety, a possessor who maintains a dangerous condition may be liable to infants when they trespass on his land. *Strang v. South Jersey Broadcasting Co.,* 9 *N.J.* 38 (1952). For the infant trespasser rule to apply, a plaintiff must establish that: (1) the infant's trespass was foreseeable, *Harris v. Mentes-Williams Co., Inc.,* 11 *N.J.* 559, 563 (1953); (2) an artificial condition existed on defendant's property, *Ostroski v. Mount Prospect Shoprite, Inc.,* 94 *N.J.Super.* 374, 380 (App.Div.1957); and (3) the condition posed an unreasonable risk of death or serious bodily injury. *Harris v. Mentes-Williams Co., supra,* 11 *N.J.* at 563. An abnormally dangerous domestic animal is like an artificial condition on the property, *Restatement (Second) of Torts* § 512 (1977), and the owner of an abnormally dangerous dog owes a duty of care to an infant trespasser. To a certain extent, therefore, the absolute liability of a defendant as the owner of a known dangerous animal overlaps the defendant's liability in negligence to an infant trespasser. Nonetheless, the effect of the infant trespasser rule is not, as the dissent suggests, to convert an infant trespasser into an invitee under the dog-bite statute, but to create a duty of ordinary care.

In determining whether that duty has been satisfied or whether the plaintiff was contributorily negligent, a court should consider all relevant facts. Some facts, such as the presence of warning signs, relate to the exercise of due care by both the owner and the plaintiff. Similarly, the age of an infant trespasser, particularly if his presence was foreseeable, could relate to the negligence of the infant or that of the owner. *See Strang v. South Jersey Broadcasting Co., supra; Restatement (Second) of Torts* § 339. Furthermore, a child of tender years may not comprehend either the significance of a warning sign or the threat posed by a dog. If, however, a child has

specific knowledge of the vicious tendencies of a chained dog and approaches the dog, both facts would tend to establish negligence on the part of the child. Even an owner who does not know of his dog's dangerous propensities but who knows that children are likely to approach the dog should exercise a degree of care commensurate with the danger that the dog poses to children.

In summary, to recover under *N.J.S.A.* 4:19–16, a plaintiff must prove that the defendant owned the dog, that the dog bit the plaintiff, and that the plaintiff was in a public place or lawfully on the owner's property. If a plaintiff is unable to recover under the statute for failure to prove any of these three elements, he still may have a cause of action based on common-law principles. If a plaintiff proves scienter, a dog-owner is absolutely liable for injuries caused by the dangerous characteristic of the dog, unless the owner can prove that the plaintiff was contributorily negligent. In that event, the determination of liability is governed by the Comparative Negligence Act. *N.J.S.A.* 2A:15–5.1. If, on the other hand, the plaintiff is unable to prove that the owner knew or should have known of the dog's dangerous characteristics, then the owner is liable only if the plaintiff is able to prove that the owner acted negligently in keeping the dog. Once again, the negligence of the plaintiff would be relevant to determining the liability of the owner. Finally, the owner of an abnormally dangerous dog owes a duty of ordinary care to an infant trespasser.

IV

At the trial of this case, a fact question existed as to whether the infant was lawfully in the area where the dog was chained. The error below was in failing to instruct the jury that if it found the infant plaintiff did not have express or implied permission to be in that area, the statute did not apply. The thrust of the dissent is that as a matter of law the infant plaintiff was an invitee within the meaning of the dog bite

statute. We believe, however, that the determination of the infant's status should have been made by the jury under proper instructions. Contrary to the dissent, the infant's status was an issue from the outset. Unfortunately, the trial court did not instruct the jury that for the statute to apply it was necessary to determine the extent of Peter's invitation. Because of the dispute, the trial court should have included a question about the status of the infant in the special interrogatories.

In many respects, it is regrettable that the parties must retry this case. Without doubt, this entire incident was traumatic for Peter and his parents. Being bitten by a large dog can be a terrifying experience, even for an adult; the trauma may be far more serious for a small child. Under proper instructions, a jury might well find that Peter was lawfully on the premises within the meaning of *N.J.S.A.* 4:19–16. Nonetheless, the status of the infant should be determined by the jury as a matter of fact. That conclusion is consistent with the holdings of the cases cited by the dissent. *See Renz v. Penn Central Corp.,* 87 *N.J.* 437, 460 (1981) (reversing an order denying infant plaintiff's motion to strike a defense of immunity under *N.J.S.A.* 48:12–152 and remanding the matter for a jury trial); *Snyder v. I. Jay Realty Co., supra,* 30 *N.J.* at 314–15 (reversing dismissal of action by guest of employee against lessor and holding that jury should determine status of guest); *Fitzpatrick v. Glass Mfg. Co.,* 61 *N.J.L.* 378 (Sup.Ct.1898) (reversal of jury verdict for infant plaintiff injured at father's place of employment and new trial ordered).

Although we share our dissenting colleagues' concern about requiring plaintiffs to retry the case, we cannot be blind to the considerations that prevented the jury verdict from representing a fair and reasonable resolution. This case started on the wrong foot with the omission from the complaint of any reference to the dog-bite statute, which is the legal basis on which plaintiffs now seek to defend the jury verdict. Until trial, plaintiffs alleged ordinary common-law negligence as the basis of their cause of action. Somewhere along the line, plaintiffs began to

rely on the statute, and the trial court became confused about the theory on which plaintiffs were proceeding. That confusion found its way into the charge, which mixed statutory and common-law strict liability principles. Perhaps for those reasons, the jury went amuck. Instead of merely compensating Vito DeRobertis (whom it found to be 20% responsible for Peter's injuries) for the medical bills, the jury awarded him double that amount. Of even greater significance, on the motion for *remittitur,* the trial court found that the verdict "was so disproportionate to the injury as to be convinced that to sustain the award would be manifestly unjust." Consequently, that court reduced the judgment to $25,000. Although it expressed an awareness of the need to defer to the trial court's "feel of the case," the Appellate Division reinstated the original jury verdict of $40,000. We find, however, that the erroneous jury instruction on liability contaminated the entire verdict and that a new trial is necessary on both liability and damages.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for a new trial.

O'HERN, J., dissenting.

I agree generally with the principles of law stated by the majority. I disagree with their application to the facts of this case. The holding would permit the jury to make a trespasser out of a five year old boy who regularly tagged along when his father went to defendant's body shop on business, and deny recovery for a severe dog bite because the boy was not "lawfully on . . . the property of the owner of the dog." *N.J.S.A.* 4:19–16. Because that result is inconsistent with the way that defendant tried the case, with our landowner liability law and with the statute protecting dog bite victims, *N.J.S.A.* 4:19–16, I must dissent.

I.

Defendant admits that plaintiff Peter regularly came without objection onto his premises with his father, Vito DeRobertis,

who operated a tow truck. Sometimes he would even sweep the floor and do other chores to help defendant's employees. He had gone before into both the body shop area and the driveway where the dog was kept, again without objection by defendant.

On June 21, 1977, one of defendant's employees, McCarthy, had taken Peter with him to the office of a doctor who was to treat McCarthy's injured hand. When they returned to Randazzo's, McCarthy dropped Peter off and Peter entered an office inside. He walked through the open door from the office into the body shop to watch an employee paint a car. The dog began to bark and Peter walked through still another open door to the driveway. After petting the dog, he noticed that his shoe was untied. When he bent to tie it, the dog, a German shepherd, bit Peter in the head and, with the child's head in its mouth, shook its head back and forth.

The bite left Peter without hair for six to eight months. The lacerations from the bite have become permanent scars. Moreover, he suffered recurrent nightmares about being bitten by large dogs. These nightmares haunted Peter intermittently for over a year after the biting.

The jury found Peter's father 20% negligent and defendant 80% negligent. It awarded Peter a total of $40,000, but the trial judge reduced it to $25,000. Defendant appealed the verdict against him, while plaintiffs contested the remittitur. The Appellate Division upheld the verdict and reinstated the jury's award.

At trial, plaintiffs moved for a directed verdict but the court denied the motion because there was a factual dispute about whether the dog had bitten or merely pawed Peter.[1] Strangely,

---

[1]Plaintiffs based their motion on *N.J.S.A.* 4:19–16, which states:

> The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

the answer to that question makes a big difference in the law. If the dog bites, the owner pays if the victim is "lawfully on or in a private place." *N.J.S.A.* 4:19–16. But if the dog mauls without biting, the statute does not apply. *Ante* at 152. The court ruled that this was an issue for the jury to resolve. Defendant himself admitted that he tolerated Peter's presence, so the boy's status simply was not at issue at trial.

The issue was not whether Peter would recover, but how much and from whom. Randazzo forcefully urged throughout the trial that Peter's father had been culpably negligent in leaving the boy unattended, and had counterclaimed for contribution from him.[2] Thus, that portion of the charge that impli-

---

For the purpose of this section, a person is lawfully upon the private property of such owner when he is on the property in the performance of any duty imposed upon him by the laws of this state or the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner thereof.
Plaintiffs' attorney argued:

I suggest to the Court that there is no doubt in any one's mind that Peter DeRobertis had an implied invitation based upon all of the testimony in the case to have access to and walk about, whether it be as a five-year-old would, jumping and wandering, or as an adult would by going into a particular area of the premises.
He then proceeded to recite the testimony. The court responded: .... [I]f you're talking in terms of *N.J.S.A.* 4:19–16, your application, I would suggest, should be limited to the issue of whether or not a bite occurred.

. . . .

If [your adversary] agrees with you [that a bite occurred], that might be one thing as to the application of the Statute, but if he disagrees with you, maybe you ought to concentrate just on that testimony which you feel would permit me to make the finding you request, vis-a-vis the Statute and a bite situation.
When defendant's counsel argued against the motion for directed verdict his only contention was that Peter's injuries were caused by the dog's pawing, not biting, him. He did not assert that Peter had not been lawfully on the premises.

[2]In his closing argument, Randazzo's counsel stated:
This was a sad, unfortunate incident. Everybody here should feel bad for little Pete. He had a bad experience. He was troubled by it for a

cated Peter's status was "purely incidental." *Skupienski v. Maly,* 47 *N.J.Super.* 409, 412 (App.Div.1957), aff'd, 27 *N.J.* 240 (1958).

The trial court expressly charged the jury with the statute, reading the statutory language in its entirety. Then it charged concerning the liability of the owner of a dog with vicious propensities. It was in *that* context that the court said:

> It must be noted that the status of the infant plaintiff on the premises, i.e. as a visitor, licensee or in some other capacity, even if tolerated is of no moment insofar as the infant's possible recovery is concerned.
>
> This is a situation where a person is injured by the actions of the dog with vicious propensities, known to its keeper, while that injured person is on the premises of the keeper of the dog. It is not necessary in order to recover for the injuries to show that he was on the premises either by invitation, by consent or by acquiescence.

Later portions of the charge tend to overlap, but by and large the jury was fully informed of the relevant law.

Moreover, the court made its comments about Peter's status in the context of a special interrogatory about the dog's vicious propensities that the parties agreed to submit to the jury. Those remarks can fairly be read to apply only to that question.

---

> time. He had a rotten summer as a result of this and everybody knows that and he's entitled to be compensated fairly, not too little, not too much, whatever you feel is the right amount. . . .
>
> . . . . [This] never would have happened if Mr. DeRobertis was a reasonable parent and he just wasn't.
>
> . . . . This place had so many—there's no other word to explain it, so many traps, traps for a kid that he has to fall beneath the standard of a reasonable parent in leaving that boy there, in just going off the way he did.

He never argued to the jury that Peter was not lawfully on the premises. Peter's counsel noted this in his own closing argument:

> What was not said, I think, and I submit is also extremely important and what was not said was that Peter did anything wrong. There is no allegation whatsoever in this case that Peter did anything wrong.
>
> What else was not said was that Peter had no right to be where he was. It was never mentioned one single time in, approximately, 45 minutes or 50 minutes of summation by the prior two counsel, not one single time.

He therefore did not dwell on the issue of Peter's status either.

In justifying the retrial, the majority chides Peter's counsel for imprecise pleading. I would have thought that "[t]he days when substantial justice must be sacrificed for the sake of blind adherence to strict technicalities long since outmoded have passed in this State and are, we hope, beyond recall." *State v. Culver,* 23 *N.J.* 495, 501 (1957) (Vanderbilt, C.J.). I therefore believe that defendant received a fair trial "in the light of the charge as a whole and the facts of the case," *see Goss v. Allen,* 70 *N.J.* 442, 448 n. 2 (1976), and that, in view of the way that the case was tried, he suffered no prejudice.

## II.

Even were this issue in the case, the undisputed facts show that Peter could not possibly have been classified as a trespasser.

The distinction between invitees, licensees and trespassers was stated in *Lordi v. Spiotta,* 133 *N.J.L.* 581, 584 (Sup.Ct.1946) thus: "The first come by invitation, express or implied; the second are those who are not invited but whose presence is suffered; the third are neither invited nor suffered." [*Snyder v. I. Jay Realty Co.,* 30 *N.J.* 303, 312 (1959)].

Under the relatively more severe standards that obtained in the nineteenth century, *see Renz v. Penn Central Corp.,* 87 *N.J.* 437, 461–62 (1981), a child who was with his father at the latter's place of employment with the permission of the employer was not a trespasser but a licensee. *Fitzpatrick v. Cumberland Glass Mfg. Co.,* 61 *N.J.L.* 378 (Sup.Ct.1898) (twelve year old plaintiff brought dinner to father at his place of employment). More recently, this Court observed:

We believe that visiting an employee at his place of employment, where a hazardous activity is not being conducted in the area visited, does not go beyond generally accepted modes of behavior or custom, and in the absence of any prior expression of disapproval by the employer the visitor is not a trespasser but one whose presence is suffered and therefore is lawfully upon the premises. [*Snyder,* 30 *N.J.* at 312–13].

In *Snyder,* plaintiff accompanied a friend to the latter's place of employment. After being introduced to defendant employer's foreman, who did not object to his presence, plaintiff "browsed around" and watched other employees while his friend and the foreman loaded cartons onto an elevator. The three of

them rode the elevator down to the loading platform, where they each picked up a carton to carry to a truck. While doing this, plaintiff stepped in a hole and injured himself. We rejected the trial court's decision that he was a trespasser as a matter of law, and ruled that "[u]nless on the retrial there is evidence of prohibition, the court should charge that plaintiff was ... a licensee and invitee." *Id.* at 314. On these remarkably similar facts, I would hold that Peter was "lawfully on or in a private place" as a matter of law for the purpose of the dog bite statute. *N.J.S.A.* 4:19–16.

Defendant might have limited the area to which Peter was authorized to go. But he did not do so expressly, and the open doors to the body shop and the driveway represented an implied authorization of Peter's presence in these areas.[3] Under the circumstances of this case, which included Peter's previous presence on the driveway without objection by defendant, and the open doors on the day of the biting, I would not permit a jury to find that Peter was not lawfully on defendant's premises. *R.* 4:40–1.

### III.

I also believe that the Court should construe the dog bite statute in light of the infant trespasser rule of *Strang v. South Jersey Broadcasting Co.,* 9 *N.J.* 38 (1952), as the Appellate Division did. As a remedial statute, *N.J.S.A.* 4:19–16 should receive a liberal construction. *Tanga v. Tanga,* 94 *N.J.Super.* 5,

---

[3]*Compare Handleman v. Cox,* 39 *N.J.* 95 (1963) (no sign on rear door prohibiting admittance; implied invitation could be found) *with State in the Interest of L.R.,* 112 *N.J.Super.* 464, 466–67 (App.Div.1970) (high, locked, barbed-wire fence around lot indicated, even without express statement, that one who entered lot was unwanted and would be treated as trespasser). The permitted area includes those parts of the premises that, depending on all the circumstances, it would reasonably be believed that the authorized individual would enter. *See, e.g., Giangrasso v. Dean Floor Covering Co.,* 51 *N.J.* 80, 83 (1968); *Handleman,* 39 *N.J.* at 110–11 (discussing implied invitation).

7 (App.Div.1967); *Gross v. Dunham,* 91 *N.J.Super.* 519, 522 (App.Div.1966).

The infant trespasser rule reflects society's compelling interest in "the protection of the life and limb of its youth." *Strang,* 9 *N.J.* at 45; 2 *Harper & James, The Law of Torts,* § 27.5 at 1450 (1956). Until today, New Jersey has been in the forefront of protecting infants. *E.g., DiCosala v. Kay,* 91 *N.J.* 159 (1982); *Renz,* 87 *N.J.* 437; Hughes, "Duties to Trespassers: A Comparative Survey and Revaluation," 68 *Yale L.J.* 633, 642–44 (1959).

*Foy v. Dayko,* 82 *N.J.Super.* 8 (App.Div.), certif. den., 41 *N.J.* 602 (1964), established that the defense of contributory negligence would be applicable even though the dog bite statute imposed strict liability. Comparative negligence, *N.J.S.A.* 2A:15–5.1 to –5.3, would similarly play an appropriate role today. These concepts reflect a judicial and legislative judgment that a plaintiff's own conduct should be considered in evaluating his personal injury claim against another.

The concepts of status and fault were historically intertwined. *Renz,* 87 *N.J.* at 444. But in *Strang* and *Harris v. Mentes-Williams Co., Inc.,* 11 *N.J.* 559 (1953), this Court relaxed the formalistic scheme and adopted the infant trespasser rule. The rule recognizes that "trespassing children of tender years ... because of immaturity are wanting in the discretion and judgment essential to their own security." *Strang,* 9 *N.J.* at 45, *accord Harris,* 11 *N.J.* at 562–63. This represented "a complete reversal of the established rule" in New Jersey. Note, "The Attractive Nuisance Doctrine—Its Status in New Jersey," 8 *Rutgers L.Rev.* 378, 383 (1954).

In *Renz,* a similarly "dramatic and avulsive change," 87 *N.J.* at 458, in the old doctrine of contributory negligence resulted in a new view of the railroad immunity act, *N.J.S.A.* 48:12–152. This awareness that statutes should be construed in light of developing legal trends, *Renz,* 87 *N.J.* at 458, should apply here as well. Therefore, in construing the dog bite statute, we should consider our recognition in *Strang* and *Harris* of chil-

dren's immaturity in their relationship to dangerous conditions on property.

The *Renz* doctrine plays a salutary role in keeping tort law abreast of the times. *See Schipper v. Levitt & Sons, Inc.,* 44 *N.J.* 70, 90 (1965). I would apply it here and incorporate the infant trespasser rule into the dog bite statute.

I have nothing against dogs, but dogs bite and children roam. The Legislature has recognized both of these facts of life. As between dog and child, I believe that the Legislature would prefer the child. *See N.J.S.A.* 4:19–16 (dog bite statute); *N.J. S.A.* 2C:40–1 (disorderly persons offense to leave unattended certain items or areas attractive to children). Therefore, "it is reasonable to believe that the Legislature itself did not intend that its enactment be insulated from changing circumstances and contemporary social values, especially when these are reflected in its own current legislative actions." *Uricoli v. Police & Firemen's Retirement System,* 91 *N.J.* 62, 77 (1982). A contrary view would retain concepts of property and status that we have long since repudiated. *See Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 276–77 (1982). Accordingly, were I to remand as the Court does, I would instruct the jury to consider whether, under the infant trespasser rule, *see* 2 *Restatement, Torts* 2d, § 339 at 197 (1965), Peter was lawfully on the premises for the purpose of the dog bite statute.

## IV.

Finally, even if the majority is impelled to remand the matter for a new trial, it should limit the retrial to the issues of liability as it has defined them. *See Greenberg v. Stanley,* 30 *N.J.* 485, 506–07 (1959); *Tabor v. O'Grady,* 61 *N.J.Super.* 446, 453 (App. Div.1960). Although the damage award may be on the high side, it is not unconscionable and should be allowed to stand. *Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 596 (1977).

Justice HANDLER joins in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, POLLOCK and GARIBALDI—5.

*For affirmance*—Justices HANDLER and O'HERN—2.