**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3284-18T2

JANET FREED,

    Plaintiff-Appellant,

v.

LINDA BASTRY and
FRANK BASTRY,

    Defendants-Respondents.

_____

Submitted April 27, 2020 – Decided June 29, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0813-17.

Blume Forte Fried Zerres & Molinari, attorneys for appellant (John E. Molinari, on the briefs).

Law Offices of Viscomi & Lyons, attorneys for respondents (Patricia R. Lyons, on the brief).

PER CURIAM

Plaintiff Janet Freed appeals from the Law Division's order granting defendants Linda and Frank Bastry summary judgment and dismissing plaintiff's complaint alleging negligence. We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted[,] "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis. The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

The motion record was largely undisputed, and, to the extent there are disputed facts, we accord plaintiff the benefit of all favorable evidence and

inferences.  R. 4:46-2(c).  Defendants' dog, a male golden retriever, ran into plaintiff while chasing plaintiff's dog, a female golden doodle, in the Off-Leash Dog Area of Thompson Park, a Monmouth County park in Lincroft.[1] "Guidelines for Use" of the off-leash dog area were posted near its entrance. One guideline prohibited dogs "with a history of dangerous or aggressive behavior[,]" as well as "[p]uppies under [four] months old[,]" from using the area.  The same guideline stated, "Dogs over [six] months old must be spayed or neutered."  On the day in question, defendants drove to the park from their home, about twenty minutes away, with their dog, who was seven-and-one-half-months old and had not been spayed or neutered.

Plaintiff and defendants were standing in the off-leash dog area approximately four feet apart, conversing about golden retrievers, as the two dogs began playing with and chasing each other.  Plaintiff testified in her deposition that she saw no reason to be concerned about either dog and never called her dog away from defendant's dog.  At one point, defendant's dog was chasing plaintiff's dog, which ran between plaintiff and defendants. Defendants' dog, however, ran into plaintiff at full speed, knocking her to the ground.

_____

[1] The two dogs were in the "all dog" area, along with plaintiff's second dog, a female golden retriever, who was quite sedate and uninvolved in the events that gave rise to the suit.  The area has a separate area for small dogs.

Plaintiff allegedly suffered a tibial plateau fracture of her right knee and underwent a series of surgeries.

Robert H. Brandau, a purported canine behavior expert, furnished a report in support of plaintiff's claim that defendants were negligent. Brandau observed that defendants' dog was more than six months old, not neutered, and had no obedience training as of the date of the incident.[2] Brandau opined, "[h]ad the [d]efendants properly neutered their dog prior to letting him run free . . . , the dog would have been less aggressive and therefore less likely to have run into the [p]laintiff's leg." After a citing a study for the proposition that "significantly more intact male[  dogs] were referred for aggressive and stimulus reactivity behavior problems[,]" Brandau wrote:

> In dog aggression toward humans, which is of far greater concern to all, it is true that un-neutered males are more likely to be involved in injury[-]related incidents. Furthermore, since male dogs are larger, such injuries can be more serious, such as in this case. A study . . . found that male dogs were 6.2 times more likely to fatally bite someone, and sexually intact dogs were 2.6 times more likely to be involved in attacks than are neutered dogs.

---

[2]  He also noted that defendants' dog was unlicensed, a violation of another guideline for the area.

A-3284-18T2

Brandau noted defendants' deposition testimony in which they acknowledged that their dog got "very excited" after a car ride, and when he was around other animals. Brandau opined, "[n]eutering a dog makes them less aggressive toward other dogs."

Defendants moved for summary judgment, contending that the park guidelines did not create a duty owed by dog owners using the area to others in the off-leash dog area. Therefore, bringing their un-neutered dog to the area breached no duty. Plaintiff contended that the park guidelines had the force of statutory law and were adopted by the county to curb aggressive canine behavior. As such, plaintiff argued a breach of the guidelines was, if not negligence per se, evidence of negligence. Plaintiff further contended that Brandau's expert opinion established that the aggressive behavior of defendants' dog caused the accident. After considering oral argument, the motion judge reserved decision and a few days later rendered an oral decision on the record.

The judge reasoned that the posted guidelines did not create a duty owed by defendants to plaintiff and others using the area. The judge also considered whether imposing a duty on defendants to regulate their dog's behavior in the off-leash area was fair, since people brought their dogs there precisely to let them run free. The judge noted that "no one describe[d defendants'] dog's

behavior as aggressive. . . . [H]e was simply running around a dog park." Citing two decisions from New York that she found persuasive, Hamlin v. Sullivan, 939 N.Y.S.2d 770 (App. Div. 2012), and Long v. Hess, 78 N.Y.S.3d 588 (App. Div. 2018), the judge concluded that a dog "running in a dog park and running into a plaintiff is not sufficient to sustain a cause of action for negligence." The judge entered the order under review, and this appeal ensued.

Before us, plaintiff argues that summary judgment was inappropriate because defendants owed all dog owners using the area a duty to comply with "validly promulgated park regulations[.]" Plaintiff also contends that a reasonable juror could conclude that defendants' decision to allow their un-neutered dog to run in the area was a proximate cause of plaintiff's injuries. We are unpersuaded and affirm.

We digress briefly to discuss the jurisprudential framework in this state regarding the liability of dog owners for injuries caused by their pets. Plaintiff's complaint did not allege a cause of action under N.J.S.A. 4:19-16, which imposes strict liability upon the owner of a dog for all damages caused if the dog bites another person. The Court has recognized that "the statute does not cover the situation in which an individual suffers injuries from being knocked down by a dog[] but is never bitten." De Robertis v. Randazzo, 94 N.J. 144,

151–52 (1983); see also Jannuzzelli v. Wilkens, 158 N.J. Super. 36, 41–42 (App. Div. 1978) ("Notwithstanding N.J.S.A. 4:19-16, a common law cause of action remains in which scienter must be proved to establish liability when a dog injures a person, but does not inflict a bite." (citing Hayes v. Mongiovi, 121 N.J. Super. 272, 274–75 (Dist. Ct. 1972), aff'd, 125 N.J. Super. 413 (App. Div. 1973))).  The owner may be liable if he or she knew or should have known of the dog's "dangerous or mischievous propensities" because "[p]eople can be injured by playful, as well as mean, dogs."  De Robertis, 94 N.J. at 150.

"A plaintiff who can prove that an owner knew of his dog's dangerous propensities is not restricted to a negligence action; that plaintiff may have a cause of action predicated on common-law absolute liability."  Id. at 153.  Here, however, plaintiff has never asserted or demonstrated that defendants had the requisite scienter regarding an aggressive or dangerous propensity on the part of their dog.  "[I]n the absence of scienter . . . , the owner should not be liable unless a plaintiff can prove the defendant's negligence in failing to prevent the injury."  Id. at 156.[3]

---

[3]  As a result, both New York decisions cited by the motion judge, and cited again by the parties in their appellate briefs, are of limited assistance, because in New York, "a cause of action for ordinary negligence does not lie against the owner of a dog that causes injury."  Long, 78 N.Y.S.3d at 589 (quoting Antinore v. Ivison, 19 N.Y.S.3d 649 (App. Div. 2015)).

"To sustain a cause of action for negligence, a plaintiff must establish four elements:  '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'"  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).  "[W]hether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide."  G.A.-H. v. K.G.G., 238 N.J. 401, 413–14 (2019) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)).

Plaintiff obviously recognized that defendants owed no duty to her and other dog owners using the off-leash dog area to restrain their dog from doing precisely what was permitted, i.e., allowing the dog to run around freely and play with other dogs.  Indeed, as plaintiff testified at her deposition, she saw nothing about the behavior of defendant's dog that suggested any need to intervene, or implicitly, for any action of defendants' part.  As a result, plaintiff attempts to have us impose a duty on defendants to have neutered their dog before bringing him to the park based solely on the posted guidelines for use of the area.

Plaintiff asserts the guidelines have the force of a duly enacted statute or regulation, and defendants' violation of the guidelines is negligence per se or evidence of their negligence because they represent the reciprocal duty users of

the area owed to each other.  Initially, we recognize that N.J.S.A. 40:32-7.12 grants a board of chosen freeholders the power by resolution to "make . . . rules and regulations for the supervision, regulation and control of all activities carried on, conducted, sponsored, arranged, or provided for in connection with a . . . recreational, playground or public entertainment facility, . . . and may prescribe and enforce fines and penalties" for a violation.  N.J.S.A. 40:32-7.13 provides that such rules and regulations "shall be enforced by the same proceedings and processes, and the practice for the enforcement thereof shall be the same as that provided by law for the enforcement of other ordinances of the municipality."

However, plaintiff never produced a resolution from the Board of Chosen Freeholders adopting the guidelines as "rules and regulations" pursuant to the statute, or prescribing any penalty for their violation.  Nevertheless, to fully address plaintiff's contention, we assume arguendo that the guidelines were validly adopted regulations, which, if violated, could be enforced in the appropriate municipal court as an ordinance violation.

A statutory or regulatory violation may be considered not only evidence of negligence. but also may be "pertinent in determining the nature and extent of any duty of care."  Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 361

(2016) (quoting Alloway v. Bradlees, Inc., 157 N.J. 221, 236 (1999)).[4] "If a 'plaintiff does not fall within the class of persons for whose benefit the statute was enacted,' such statute is 'not applicable either as evidence of a duty or as evidence of negligence arising from a breach of such alleged duty.'" Badalamenti v. Simpkiss, 422 N.J. Super. 86, 101–02 (App. Div. 2011) (quoting Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963)). More importantly in this case, "the harm suffered must be of the kind which the statute was intended, in general, to prevent[.]" Id. at 102 (quoting Prosser & Keeton on Torts § 36 (5th ed. 2001)).

In Piscitelli v. Classic Residence by Hyatt, we considered whether the federal Immigration Reform and Control Act (IRCA), particularly 8 U.S.C. § 1324a, established a standard of conduct which violation could support a claim for negligence. 408 N.J. Super. 83, 105 (App. Div. 2009). We adopted the principles set forth the Restatement (Second) of Torts, § 286 (1965), which states:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose

---

[4] Only in rare circumstances are violations of a statute conclusive proof of negligence. Eaton v. Eaton, 119 N.J. 628, 642 (1990).

> interest is invaded, and (b) to protect the particular interest which is invaded, and (c) <u>to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results</u>.
>
> [(Emphasis added).]

We concluded that the plaintiff was not in the class of individuals IRCA intended to protect, nor was the statute intended to protect against the plaintiff's claim that defendant's negligence led to theft of her identity, nor was the statute enacted to protect against that harm. <u>Piscitelli</u>, 408 N.J. Super. at 106.

In this case, although plaintiff never produced any evidence regarding the reason for adopting the guidelines, we accept that limits on use of the area to dogs six months or older, only if spayed or neutered, was intended to benefit both the canine and human occupants of the off-leash dog area. Furthermore, the guidelines may have been intended to curb aggressive behavior in older dogs, thereby reducing the likelihood of sexual aggression toward other dogs, or the biting of dogs or humans.

However, the guidelines were not intended to reduce the risk to those in the off-leash area posed by a dog otherwise exhibiting no overt aggressiveness or rambunctious behavior, such as jumping up on other dogs or humans in the area. Even if we assume the guidelines reflected a reciprocal duty imposed on

dog owners using the area to spay or neuter a dog that was more than six months old, the guidelines were not intended to reduce the risk posed by normal canine behavior, i.e., one dog running after another dog and, in the process, colliding with a human. The guidelines were not intended to reduce the risk of the particular hazard that caused plaintiff's alleged harm in this case.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3284-18T2