158 N.J. Super. 36 (1978)
385 A.2d 322
JOSEPH JANNUZZELLI AND JUDY JANNUZZELLI, HIS WIFE, GUARDIAN AD LITEM FOR THE INFANT, DENISE A. JANNUZZELLI, A MINOR, PLAINTIFFS-APPELLANTS,
v.
EDWARD WILKENS AND MELINA WILKENS, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 1977.
Decided April 4, 1978.
*38 Before Judges LORA, SEIDMAN and MILMED.
Mr. Alan G. Cosner attorney for appellants.
Messrs. Bennett and Daniel, attorneys for respondents (Mr. Cornelius W. Daniel, III on the brief).
The opinion of the court was delivered by LORA, P.J.A.D.
Plaintiffs Joseph and Judy Jannuzzelli sued on behalf of their infant daughter Denise for injuries inflicted upon her by defendants' dog. Following a bifurcated trial on the issue of liability only, the jury returned a verdict of no cause for action in favor of defendants. A motion by plaintiffs for a judgment n.o.v. or in the alternative a new trial was denied by the trial judge.
On appeal plaintiffs contend that (1) the jury's verdict should be overturned since there was no evidence contradicting plaintiffs' proof that the child was bitten, (2) defendants knew the dog's vicious propensities, failed to fence the dog, and should be held liable, and (3) bifurcation of the trial *39 prevented complete testimony which would have shown a bite.
It was uncontroverted that defendants' dog, while secured by a five-foot chain attached to his doghouse which was flush against the back of defendants' attached garage, did injure Denise on or about the face and neck, requiring medical treatment including 13 sutures. The child was 3 1/2 years old at the time, the parties being adjacent neighbors with their single-family homes situated on approximately half acre plots. The Wilkens' backyard was unfenced and on the other side of their property is a school and playground which runs alongside defendants' property and around the rear property line. A number of bushes six feet apart are planted on the property line. Across the rear property line of plaintiffs' yard and along the sides to the back of their house is a fence which prevents anyone from walking from plaintiffs' property to the school yard other than by using the sidewalk.
The only eyewitness was the child herself, who was five at the time of trial. She stated that she left the playground and went over to see the dog and as she bent down to pet him he bit her. However, her testimony was contradictory in several respects. The trial judge's impression expressed on the record was that she probably had been influenced by admitted subsequent discussions of the incident, and it was doubtful, especially in light of her age, whether her recitation was completely based on her independent recollection of the event.
The dominant issues in dispute were whether the child had been scratched or bitten, whether defendants had knowledge of their dog's vicious or mischievous propensities, and whether defendants were negligent in the keeping or control of the dog. Defendants also interposed the defense of contributory negligence of plaintiffs in supervising their child. It is clear that if the child had been bitten, then the New Jersey dog bite statute would hold defendants strictly liable for damages from the attack. N.J.S.A. 4:19-16; Tanga v. Tanga, 94 N.J. Super. 5 (App. Div. 1967); Hayes *40 v. Mongiovi, 121 N.J. Super. 272 (Law Div. 1972), aff'd 125 N.J. Super. 413 (App. Div. 1973); Gross v. Dunham, 91 N.J. Super. 519 (App. Div. 1966); Dower v. Goldstein, 143 N.J. Super. 418, 422 (App. Div. 1976). The jury, in an answer to a special interrogatory, found that the child had not been bitten.
Defendants did not deny that the dog injured the child, rather, it was their position that the dog loved to be petted, and when one stopped petting him, he would jump up to try to persuade that person to continue petting him; that here the dog had only jumped up on the child and scratched her with his paws. Mr. Wilkens testified that the dog had never before bitten anyone. He did admit that the dog had a propensity to jump up on people in an attempt to get them to pet him, and in the course of such action would scratch them with his paws. This had happened on occasion. Wilkens also admitted that on two previous occasions the dog had injured small children by jumping up and scratching them on the face with his paws. On one of these occasions, while chained up in his backyard, the dog had scratched an eight-year-old boy who had been petting him.
Accepting as true all the favorable evidence and the legitimate inferences therefrom which support defendants' contention that the child was scratched and not bitten, we are satisfied that a judgment n.o.v. was properly denied as to this issue. R. 4:40-1, 2; Dolson v. Anastasia, 55 N.J. 2, 5 (1969). In support of a finding that the child was scratched were the previous history of the dog's actions, including the fact that although the dog had scratched people in the past, he had never bitten anyone; photographs of the injuries taken the day after the incident; the viewing of the child's scars and their position on her face, chin and neck, and the unobjected to hearsay testimony of Mrs. Jannuzzelli from the prior municipal court proceeding that the treating physician thought that maybe the marks on the cheek were scratches and the one under the chin might be from a bite. Also tending to support a scratch theory was the contradictory nature *41 of the child's testimony that she was bitten and that the dog had jumped up with his paws.
Furthermore, we are convinced that giving deference to the trial judge with respect to witness credibility and demeanor and "the feel of the case," a miscarriage of justice is not apparent by the denial of a motion for a new trial on the ground that the jury's finding that Denise was not bitten in answer to a special interrogatory was against the weight of the evidence. R. 2:10-1; Dolson v. Anastasia, supra at 6-7. Under the circumstances the jury could properly choose to disregard the child's testimony and refuse to accept plaintiffs' hypothesis of how the injury occurred.
While the record supports the jury's determination that a bite did not occur, and therefore N.J.S.A. 4:19-16 did not apply, the admissions of the defendants were such that the trial judge should have ruled in favor of plaintiffs on the common law cause of action brought for the benefit of their infant daughter. The jury had returned with a negative response to the following interrogatory:
Whether defendants Wilkens had knowledge of their dog's vicious propensities and were negligent by their failure to take reasonable precautions against their dog causing harm to Denise Jannuzzelli.
However, scienter of the dog's mischievous propensities was clearly admitted and consequently it was not incumbent upon plaintiffs to establish that defendants were negligent in their control of the dog.
Notwithstanding N.J.S.A. 4:19-16, a common law cause of action remains in which scienter must be proved to establish liability when a dog injures a person, but does not inflict a bite. Hayes v. Mongiovi, supra, 121 N.J. Super. at 274-275. Scienter has been generally described as knowledge by an owner of his dog's vicious or mischievous propensities. But scienter extends to the trait or propensity which has caused the damage, and knowledge by the owner that the disposition of the animal is such that it is likely to commit a similar injury to that complained of, be it in anger or play, *42 is sufficient to maintain the action. Emmons v. Stevane, 77 N.J.L. 570, 572 (E. & A. 1909); cf. Dranow v. Kolmar, 92 N.J.L. 114 (Sup. Ct. 1918); Evans v. McDermott, 49 N.J.L. 163 (Sup. Ct. 1886). Knowledge by an owner of his dog's overly demonstrative affection or playfulness, with a propensity for enthusiastically jumping up on visitors, is enough to establish scienter in an action for damages resulting from such an act. 3 Restatement, Torts 2d, § 509 at 16-19 (1977); Prosser, Torts (4 ed. 1971), § 76 at 501.
Here, the record is clear that scienter was admitted by defendants. Mr. Wilkens testified as to his previous knowledge of the propensity of his dog to jump up and scratch people in an attempt to get them to pet him and of previous injury to small children in this manner, including one instance when the dog was chained in the backyard. Such knowledge being admitted, it was unnecessary to submit the question of scienter to the jury if they found the child was scratched. However, the question having been submitted, there is no support in the record for a finding of no scienter, and if the negative response to interrogatory number two was because of such a finding, it was obviously against the weight of the evidence.
The second part of the interrogatory in question was whether defendants were negligent in keeping the dog. We question whether, in a common law action in New Jersey, negligence in addition to scienter need be proved to establish liability on the part of a dog owner for injuries inflicted by the dog. As stated by Judge Conford in his comprehensive review of the law before the dog bite statute:
* * * Knowledge by owners or harborers of any vicious or injurious propensities of their domestic animals, like dogs, operated at common law to put such owners in the same liability category as keepers of wild or undomesticated animals, presumed to be harmful. Keepers of such animals were subject to strict liability to victims of injuries therefrom as insurers. Prosser on Torts (3 ed. 1964), pp. 513-514; 2 Harper and James, Torts (1956), § 14.11, pp. 833-835; 3 C.J.S. Animals § 151, pp. 1256, 1257. There is an abundance of New Jersey cases recognizing these principles and the underlying rationale *43 that scienter of the dog's viciousness causes liability to rest on the mere harboring of the animal  not on negligence in its keeping and control. Emmons v. Stevane, 77 N.J.L. 570, 572 (E. &. A. 1909); Barber v. Hochstrasser, 136 N.J.L. 76, 79 (Sup. Ct. 1947) (not affected by the statute because injury other than bite); Dranow v. Kolmar, 92 N.J.L. 114 (Sup. Ct. 1918); see, apparently assuming the rule to be as stated and applying it without discussion, Gladstone v. Brinkhurst, 70 N.J.L. 130 (Sup. Ct. 1903); Perkins v. Mossman, 44 N.J.L. 579 (Sup. Ct. 1882); Evans v. McDermott, 49 N.J.L. 163 (Sup. Ct. 1886); Roehers v. Remhoff, 55 N.J.L. 475 (Sup. Ct. 1893). [Tanga v. Tanga, supra, 94 N.J. Super. at 8-9]
The one evidently aberrant view was expressed by Chief Justice Gummere in DeGray v. Murray, 69 N.J.L. 458 (Sup. Ct. 1903). In that case an action was brought to recover for injuries sustained by plaintiff from being bitten on a public street by defendant's dog after it escaped from a locked carpenter's shop by gnawing away at the woodwork around the door lock. On two or three prior occasions the dog had "flown at" a policeman, whose duty required him to daily pass by the premises of defendant, and, on another occasion, the dog had "sprung at" a boy who was passing by and made two little holes or spots upon his leg. The policeman was not bitten and it was uncertain whether the marks on the boy's legs were made by the dog's teeth or by its claws. The Chief Justice first determined that the directed verdict in favor of defendant be upheld because the evidence failed to prove scienter. However, he then held that even assuming scienter the direction of a verdict in defendant's favor was not erroneous since defendant could not be held liable where he had exercised due care in confining the animal indoors but it had nevertheless broken out into the street.
He disagreed with the accepted view for liability as an insurer of an animal-owner with scienter and that negligence is presumed without express averment and stated:
The right of a man to keep a vicious dog for the protection of his home and property is conceded in the case of Roehers v. Remhoff [55 N.J.L. 475]. He is, of course, bound to exercise a degree of *44 care, commensurate with the danger to others which will follow the dog's escape from his control, to so secure it that it will not injure anyone who does not unlawfully provoke or intermeddle with it. Worthen v. Love, 60 Vt. 285. But if the owner does use such care, and the dog nevertheless escapes and inflicts injury, he is not liable.
In the case now under consideration the undisputed evidence makes it clear that the defendant fully discharged the duty of using due care to prevent the escape of his dog from his premises, and that the plaintiff's injury was not due to any neglect in that regard upon his part. She was bitten in the early morning, between half-past six and seven o'clock. On the preceding evening the defendant shut the dog in his carpenter shop (which adjoined his dwelling) and locked him in. During the night the dog gnawed away the woodwork from around the lock of the door to such an extent that the lock became detached, thus permitting the door to open and the dog to escape. That a reasonably prudent man would not have anticipated any such occurrence must be admitted. [at 461]
Subsequent to that decision the Court of Errors and Appeals, in Emmons v. Stevane, supra 77 N.J.L. at 572, reiterated the rule of liability as not proceeding on negligence but rather on the liability of the owner as an insurer, with the following comment:
* * * except, perhaps, as modified by what was said in DeGray v. Murray [69 N.J.L. 458], but which it is here unnecessary to consider, as the direct point decided in that case is not raised in the case sub judice. [77 N.J.L. at 572]
In Emmons plaintiff was bitten while defendants were boarding their dogs with plaintiff. In Eberling v. Mutillod, 90 N.J.L. 478 (E. & A. 1917), where a large dog allowed to run at large on defendant's property bit a newsboy, and where the dog had twice previously attacked others, the court held that the owner had failed to control his dog and DeGray v. Murray, supra, would not apply. In Backhofen v. Blumetti, 1 N.J. Misc. 11 (Sup. Ct. 1923), DeGray was squarely endorsed. But in Barber v. Hochstrasser, 136 N.J.L. 76, 79 (Sup. Ct. 1947), Justice Heher did not cite DeGray or refer to the defense of due care but rather restated in classic terms the rule of liability as an insurer for the keeping of animals *45 known to be vicious, citing Emmons v. Stevane, supra (136 N.J.L. at 79). Judge Conford, in Tanga, supra, wrote, "we are satisfied that our Legislature in adopting the statute contemplated that all dogs, even those ordinarily harmless, have a potential for biting, and that owners should as the social price of keeping them compensate those innocently sustaining injury in that fashion."
Viability of the DeGray decision appears, then, to be limited to a situation involving escape of a dog from the control its owner has exercised over the animal, thus giving rise to the question of whether such owner has exercised due care to secure the dog from escaping and inflicting injury. Here, however, there was no escape and the injury occurred within the sphere of control defendants had determined to exercise over their dog. It injured the child while it was chained in defendants' unfenced backyard after knowledge that the dog in the same setting had previously injured others. Accordingly, DeGray v. Murray, supra, is not applicable to the facts of this case, and it was not incumbent on plaintiffs to prove negligence on the part of the defendants. The keeping of the animal and the occurrence of the injury within the control exercised made defendants who had scienter liable as insurers for the injuries sustained. Emmons v. Stevane, supra, 77 N.J.L. at 572; Tanga v. Tanga, supra, 94 N.J. Super. at 8.
Plaintiffs in their brief assert, and defendants concede in their answering brief, that there is no issue in the case of trespass or contributory negligence of the infant plaintiff. In any event, we note in passing that in Eberling v. Mutillod, 90 N.J.L. 478 (E. & A. 1917), the only New Jersey decision directly on point, where a boy delivering newspapers to tenants on the property of the dog owner was bitten, the keeper of an animal known to be dangerous, which injures another, was held to the same degree of responsibility as in cases of willful or wanton injury, regardless of the care he exercised in keeping or restraining the animal, and hence the fact that the person injured was trespassing did not *46 exonerate the owner. However, it was further held that the contributory negligence of the trespasser would be a proper defense. Finding that there was evidence that the boy was not guilty of any contributory negligence, the jury verdict in his favor was upheld. 90 N.J.L. at 481-482. See generally, Dooley, 3 Modern Tort Law, Animals, § 37.05 (1977). But see 3 Restatement, Torts 2d, §§ 511-512 at 20-23 (1977), for the view that a landowner who possesses a dangerous domestic animal is not subject to strict liability in the case of a trespasser and his liability is based on negligence to trespassers for other artificial conditions or activities on the land. In Annotation, "Liability of owner of dog known by him to be vicious for injuries to trespasser," 64 A.L.R.3d 1039 (1975), the varying views are discussed at length, and on the basis of Eberling v. Mutillod, supra, New Jersey is listed among those jurisdictions supporting the view that an owner of a dog known by him to be vicious is strictly liable for injuries to trespassers where the dog was not restrained by a chain, an inclosed yard or the like, at the time of the attack, with the negligence of the trespasser recognized as a defense. Id. at 1056.
In view of all of the foregoing it would appear that if trespass had been an issue in this case, we would be constrained to follow the holding in Eberling, supra, and conclude that defendants with scienter of a dangerous or mischievous dog would be strictly liable for injuries to the infant trespasser incapable of contributory negligence. Finally, we note that in the case of invitees and licensees, the Restatement holds the dog owner strictly liable. 3 Restatement, Torts 2d, § 513 at 23 (1977).
Scienter having been admitted by the testimony of defendants, and the negligence, if any, of defendants and trespass not being in issue, the trial judge should have directed a verdict in favor of the infant plaintiff at the end of all the proofs or granted the motion for a judgment n.o.v.
Although not reached by the jury and not raised as an issue on appeal, contributory negligence, if any, of the *47 plaintiff parents in supervising the child is not available as a defense against the claim of the infant plaintiff. Contributory negligence of a parent or guardian of a child non sui juris in exposing or permitting a child to be exposed to danger, cannot be imputed to a child so as to preclude an action by the child, or one brought on his behalf, against a third person whose act injured the child. Markey v. Consolidated Traction Co., 65 N.J.L. 82, 83-84 (Sup. Ct. 1900), aff'd o.b. 65 N.J.L. 682 (E. & A. 1901); Traction Co. v. Heitman's Adm'r, 61 N.J.L. 682, 683 (E. & A. 1898); Newman v. Phillipsburg Horse Car R.R. Co., 52 N.J.L. 446 (Sup. Ct. 1890); 2 Restatement, Torts 2d, § 488 at 544-545 (1965); 58 Am. Jur.2d, Negligence, § 470 at 38-39. Defendants do not contend that the child had the capacity to be contributorily negligent, i.e., act unreasonably under the circumstances, in light of her age, training, judgment and other relevant factors which apply to the child. Foy v. Dayko, 82 N.J. Super. 8 (App. Div. 1964), certif. den. 41 N.J. 602 (1964). Cf. Bush v. N.J. & N.Y. Transit Co., Inc., 30 N.J. 345 (1959).
However, the foregoing does not dispose of the issue of the comparative negligence, if any, of plaintiff parents insofar as their per quod claim is concerned.
Reversed and remanded to the Law Division for entry of judgment in favor of the infant plaintiff as to liability and for trial of the issue of comparative negligence, if any, of the plaintiffs Joseph Jannuzzelli and Judy Jannuzzelli on their per quod claim, and for further proceedings not inconsistent with this opinion.