794 A.2d 893

KAYLA PIPPIN, A MINOR BY AND THROUGH HER NATURAL MOTHER GUARDIAN AD LITEM, JOAN PIPPIN, AND JOAN PIPPIN, INDIVIDUALLY AND IN HER OWN RIGHT, PLAIN-TIFFS–RESPONDENTS, v. CAROL FINK, DEFENDANT–AP-PELLANT, v. CHRISTINE AGRESTA, DEFENDANT–RESPON-DENT.

Superior Court of New Jersey
Appellate Division

Argued October 16, 2001—Decided April 17, 2002.

Before Judges STERN,[1] COLLESTER and PARKER.

*Stacy Moore, Jr.,* argued the cause for appellant Carol Fink (*Parker, McCay & Criscuolo,* attorneys; *Mr. Moore,* on the brief).

*Stephen Guice* argued the cause for respondent Kayla Pippin.

*William J. Golden* argued the cause for respondent Christine Agresta.

The opinion of the court was delivered by

COLLESTER, J.A.D.

Pursuant to leave granted, defendant Carol Fink appeals from an order denying her summary judgment, on a complaint against her for injuries to the infant plaintiff as a result of a dog bite.

The relevant facts are that on Saturday, May 23, 1998, Kayla Pippin, along with other children Amanda Baliff, Justin Baliff and a girl named Jessie, walked to 122 Albany Avenue in Barrington to use the pool on the property owned by Carol Fink. The request of the children was not unusual since Kayla and other neighborhood children had previously used the pool. Carol told the children they could go swimming only if one of their mothers supervised. The children walked to the Baliff home and spoke to Janice Baliff, who agreed to come over in a few minutes. The children returned to wait by the pool.

Kayla applied her sun block and sat at the top of a slide leading into the pool. Zeus, a 110 pound Rottweiler dog who lived with Carol and Christine, was "doing laps" in the pool. Kayla and the other children had played with Zeus both in and out of the water on other occasions without any problems. However, when Kayla slipped and slid down the water slide into the pool, Zeus bit her on the cheek and the arm. Carol rushed to aid, placing a towel on

---

[1] Judge Stern did not participate in the argument but with the consent of all counsel has participated in the disposition of the appeal.

Kayla's face. An ambulance was called, and Kayla was taken to the hospital.

Zeus was purchased by co-defendant Christine Agresta from a Pennsylvania pet store in 1994 when he was five months old. At that time Christine lived in Philadelphia. Carol was her co-worker and friend. When Christine told her she liked Rottweilers, Carol mentioned she knew of one for sale. Both women went to the pet store on at least two occasions. According to Christine, Carol convinced her to buy the dog she named Zeus.

A short time later Christine moved with Zeus to Rochester, New York and lived there for about a year and a half. During that time Christine was Zeus' sole caretaker. She registered him and listed herself as owner. By 1996 the relationship between Carol and Christine had grown beyond friendship. Christine and Zeus moved into Carol's home where the two women shared expenses, established a joint bank account and lived in every way as a couple, considering themselves life partners.

They purchased another dog they named Mitzi and registered her with the municipality listing themselves as joint owners. While they did not so register Zeus, they considered him "their dog." They shared his expenses as well as feeding, walking and otherwise caring for him. After the incident with Kayla, they jointly participated in the decision to euthanize him.

Suit was brought by Kayla's mother as guardian ad litem against both Carol and Christine. After discovery was completed, the parties conceded that there was no proof of prior vicious or aggressive behavior by Zeus. Therefore, the issue was the applicability of *N.J.S.A.* 4:19–16, commonly known as the dog bite act. The strict liability statute reads as follows:

"The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness."

[*N.J.S.A.* 4:19–16.]

Both plaintiff and Carol Fink moved for summary judgment on the issue as to whether Carol falls within the statutory definition of an "owner" for imposition of liability under the statute. The motion judge denied both applications. We granted Carol's motion for leave to appeal.

Since the statute contains no designated definition of an "owner," it is necessary to apply principles of statutory construction. The "owner" of a dog is defined in a related statute known as a the Rabies Control Act, *N.J.S.A.* 4:19–15.1 to –15.29, as ". . . every person having a right in [a] dog and every person who has a dog in his keeping." *N.J.S.A.* 4:19–15.1. However, we have held that the statutes are not to be read *in para materia* since the Rabies Control Act is a regulatory statute mandating uniform licensing of dogs for the community health goal of preventing spread of rabies while the dog bite act serves a narrower purpose of eliminating scienter in a civil action to impose strict liability in favor of a bite victim. *Mascola v. Mascola,* 168 *N.J.Super.* 122, 125, 401 *A.*2d 1114 (App.Div.1979).

■ Cases dealing with common law liability for an injury caused by a dog attack have used the description "owner" interchangeably with a "harborer" or "keeper" in the inquiry as to whether there was knowledge of a dog's vicious propensity and a failure to control the animal. *DeRobertis by DeRobertis v. Randazzo,* 94 *N.J.* 144, 151, 462 *A.*2d 1260 (1983); *Jannuzzelli v. Wilkins,* 158 *N.J.Super.* 36, 41, 385 *A.*2d 322 (App.Div.1978). However, the dog bite act is in derogation of common law, and its terms must be strictly construed. *Foy v. Dayko,* 82 *N.J.Super.* 8, 12–14, 196 *A.*2d 535 (App.Div.), *certif. denied,* 41 *N.J.* 602, 198 *A.*2d 446 (1964); *Young v. Schering Corp.,* 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995). Accordingly, we cannot rely upon the broad reading of "owner" in the cases interpreting common law liability.

Our decisions interpreting the dog bite act reflect a restrictive definition of a dog "owner." We have held that the statute was not applicable to an action by a child against his parents who were caring for a dog belonging to the child's uncle while he was on

vacation because we considered the parents as temporary custodians or "keepers" rather than "owners." *Mascola, supra,* 168 *N.J.Super.* at 126–28, 401 *A.*2d 1114. We refused to extend the statute to affix liability on a landlord who allegedly knew that a tenant's dog was improperly on the premises. *Hyun Na Seo v. Yozgadlian,* 320 *N.J.Super.* 68, 726 *A.*2d 972 (App.Div.1999). Similarly, we found that a homeowner who permitted stray dogs to remain on his property was not subject to strict liability under the statute. *Rodriguez v. Cordasco,* 279 *N.J.Super.* 396, 652 *A.*2d 1250 (App.Div.), *certif. denied,* 142 *N.J.* 451, 663 *A.*2d 1358 (1995).

■ Carol argues that under a properly narrow reading of the statutory language she cannot be considered the "owner" of Zeus because it was Christine who purchased Zeus and registered him in New York. However, while purchase and registration are significant evidence of the identity of a dog's "owner" within the meaning of the act, they are not determinative. Circumstances existing at the time of the dog's bite must be examined, and the actions, attitudes and understanding of the suggested owner or owners must be considered.

Both Christine and Carol testified that they considered Zeus "their dog." Their actions comport with the usual understanding of dog ownership by a couple. They shared the burdens and benefits of Zeus as a family pet and held themselves out to the world as his owners. In light of these undisputed facts we hold that Carol as well as Christine was an "owner" of Zeus.

Since plaintiff made no cross-motion for leave to appeal, we would not ordinarily consider her argument that the trial judge erred in failing to grant her summary judgment as to Carol's liability under the dog bite act even though the issue was briefed and argued by the parties. *R.* 2:3–4(a); *R.* 2:5–6(b); *Semexant v. MIL Ltd.,* 252 *N.J.Super.* 318, 599 *A.*2d 935 (App.Div.1991). However, consideration of judicial economy in light of our decision on the appeal by Carol leads us to decide the issue. *See, M.J. Paquet, Inc. v. New Jersey Dept. of Transp.,* 335 *N.J.Super.* 130, 135, n. 1, 761 *A.*2d 122 (App.Div.), *certif. granted,* 167 *N.J.* 635, 772

*A.*2d 937 (2001); *Matter of Estate of Karas,* 197 *N.J.Super.* 642, 485 *A.*2d 1083 (App.Div.1984). Since we have held that Carol was an "owner" of the dog within the meaning of *N.J.S.A.* 4:19–15.1, we reverse the denial of summary judgment to plaintiff.

Affirmed in part. Reversed in part.