SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Bonay Goldhagen v. Susan Pasmowitz (A-17-20) (084668)

**Argued March 16, 2021 -- Decided August 5, 2021**

**PATTERSON, J., writing for a unanimous Court.**

The Dog Bite Statute, N.J.S.A. 4:19-16, establishes a strict liability cause of action that a plaintiff injured by a dog bite may assert against the dog's owner. In this appeal, the Court considers whether the Dog Bite Statute includes an exception, based on primary assumption of the risk, for independent contractors hired to care for a dog.

In July 2015, defendant Susan Pasmowitz's Rottweiler mix, Louie, bit plaintiff Bonay Goldhagen, causing a severe facial injury. At the time of the incident, plaintiff was a groomer and kennel assistant employed at a pet care facility where defendant boarded Louie and her other dog, Otis. Defendant told plaintiff and the facility's manager that Louie had "nipped" or "bit" her son, and she urged caution in handling the dog. Defendant completed an intake form that was displayed outside the kennel housing Louie and Otis. The intake form indicated that defendant's dogs "Must eat separately" -- a notation underlined and emphasized with an asterisk -- and that staff should "sit with Otis to eat."

Plaintiff admitted that she did not review the intake form for defendant's dogs until after Louie bit her. According to plaintiff, a kennel staff member told her that the dogs needed to be fed separately. Plaintiff testified that the facility was very busy and "only had one accommodation for the dogs, so in order to separate them somebody would have to go in and sit with one of them." Plaintiff stated that when she was sitting next to Otis after putting the dogs' food bowls down in their kennel, she turned around to look at Louie, and he bit her.

Plaintiff asserted a claim based on the Dog Bite Statute, as well as common-law claims for absolute liability and negligence. The trial court granted defendant's motion for summary judgment, relying on an independent contractor exception to strict liability under the Dog Bite Statute recognized by the Appellate Division in Reynolds v. Lancaster County Prison, 325 N.J. Super. 298 (App. Div. 1999). The trial court denied plaintiff's cross-motion for partial summary judgment on the issue of liability with respect to her common-law claims.

1

The Appellate Division affirmed the grant of summary judgment to defendant and denial of plaintiff's cross-motion. The Court granted certification. 244 N.J. 335 (2020).

**HELD:** The Dog Bite Statute's strict liability standard applies to the claim of an independent contractor who agrees to care for a dog. The statute's plain language reveals no legislative intent to recognize an exception to strict liability under the Dog Bite Statute for any category of injured plaintiffs. See N.J.S.A. 4:19-16. However, the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, applies to plaintiff's strict liability claim, and plaintiff's status as a professional experienced in the care of dogs is relevant to an allocation of fault. Genuine issues of material fact warrant the denial of plaintiff's motion for partial summary judgment on her common-law claims.

1. Prior to the enactment of the Dog Bite Statute in 1933, dog owners were liable for biting incidents only if they knew of the animal's dangerous or mischievous propensities. When it adopted the Dog Bite Statute, the Legislature expanded the liability of dog owners by imposing a standard of strict liability in dog-bite cases meeting the statutory terms. The Statute provides that the owner of a dog that bites a person in a public place or lawfully in a private place "shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness." N.J.S.A. 4:19-16. Case law underscores the Legislature's intent to impose a strict liability standard on dog owners in cases governed by the Dog Bite Statute, rather than a standard of negligence. (pp. 14-16)

2. N.J.S.A. 4:19-16's status as a strict liability statute does not mean that a defendant subject to that statute is barred from asserting the plaintiff's fault as a defense. Under the Comparative Negligence Act, the trier of fact first determines "the full value of the injured party's damages" and then assesses "[t]he extent, in the form of a percentage, of each party's negligence or fault," totaling one hundred percent. N.J.S.A. 2A:15-5.2(a)(1) to (2). Based on the trier of fact's findings, the judge molds the judgment. Id. at (d). If the trier of fact allocates fifty-one percent or more of the fault to the plaintiff, the plaintiff does not recover damages. See N.J.S.A. 2A:15-5.1. The Legislature expressly provided that the Comparative Negligence Act applies to "strict liability actions." N.J.S.A. 2A:15-5.2(a). That includes a strict liability action under the Dog Bite Statute. When a plaintiff pursues a strict liability claim under the Dog Bite Statute and the defendant asserts the plaintiff's negligence as a defense, the plaintiff's negligence may bar the statutory claim, or diminish her recovery of damages in that claim. The plaintiff's background, experience, knowledge of the dog's potential dangers, and conduct in handling the dog, among other considerations, may be relevant factors in that determination. (pp. 17-19)

3. In Reynolds, the Appellate Division applied the doctrine of primary assumption of the risk, and held that a dog owner is not liable under the Dog Bite Statute to an independent contractor who has agreed to care for the dog unless the owner knew, or had reason to know, that the dog was vicious and withheld that information. 325 N.J. Super. at 324.

2

The plain language of N.J.S.A. 4:19-16, however, imposes strict liability on "[t]he owner of any dog" that bites a "person" who is, at the time of the dog bite, in a public place or lawfully in a private place. N.J.S.A. 4:19-16. The term "person" is unmodified by any limiting term. Ibid. Nothing in the provision suggests that the Legislature intended to exclude any category of dog owners from statutory liability, let alone any indication that claims asserted by independent contractors are exempt from the statute's general rule. In that regard, the Dog Bite Statute stands in stark contrast to statutes that govern liability for injuries suffered while participating in inherently dangerous activities and that incorporate assumption of the risk in the statutory terms. When the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. The Legislature's choice not to incorporate assumption of the risk into the Dog Bite Statute for independent contractors -- or any other category of plaintiffs -- signals its intent not to limit the statute's strict liability rule. (pp. 19-24)

4. The Court reverses the Appellate Division's decision, premised on the Reynolds exception, affirming the grant of summary judgment. However, defendant may raise plaintiff's experience in working with dogs, the warnings provided, her conduct in handling the dog, and other facts relevant to comparative negligence, and may argue in a summary judgment motion that plaintiff's comparative fault warrants dismissal of her statutory claim. If the case proceeds to trial, defendant may present evidence relating to plaintiff's professional status, knowledge, experience, and conduct and may seek an allocation of fault to plaintiff pursuant to the Comparative Negligence Act. (pp. 24-25)

5. Genuine issues of material fact preclude a grant of partial summary judgment to plaintiff as to liability on her Dog Bite Statute claim and her common-law claims. There remain significant factual disputes regarding the information that defendant provided to plaintiff and her employer regarding the risk posed by the dog, plaintiff's conduct before and during the incident, and other relevant issues. Defendant's assertion of a defense based on the Comparative Negligence Act and prima facie evidence supporting that defense preclude the entry of partial summary judgment on liability based on the Dog Bite Statute. The Court provides guidance to the trial court on the relationship between plaintiff's statutory claim under the Dog Bite Act and her common-law claims. The trial court should apply the principles stated in DeRobertis v. Randazzo, 94 N.J. 144, 158 (1983), when it determines plaintiff's statutory and common-law claims, and decides which, if any, of those claims should be presented to the jury. If the jury considers either common-law claim, and defendant presents evidence of plaintiff's negligence, the jury should allocate fault pursuant to the Comparative Negligence Act with respect to those claims. (pp. 25-28)

**AFFIRMED in part; REVERSED in part. REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-17 September Term 2020
## 084668

Bonay Goldhagen,

Plaintiff-Appellant,

v.

Susan Pasmowitz,

Defendant-Respondent,

and

Bernice Brooks,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 16, 2021 | August 5, 2021 |

Joseph Monaco argued the cause for appellant (Monaco Law, attorneys; Joseph Monaco, on the brief).

Andrew Siegeltuch argued the cause for respondent (Lucosky Brookman, attorneys; Andrew Siegeltuch, on the letter brief).

Melissa M. Baxter argued the cause for amicus curiae New Jersey Association for Justice (Rossetti & DeVoto, and Grungo Colarulo, attorneys; Melissa M. Baxter and Christine V. Lafferty, on the brief).

1

The Dog Bite Statute, N.J.S.A. 4:19-16, imposes liability on dog owners in personal injury actions arising from dog bites in certain settings, "regardless of the former viciousness of such dog or the owner's knowledge of such viciousness." It establishes a strict liability cause of action that a plaintiff injured by a dog bite may assert against the dog's owner if the plaintiff proves the elements set forth in the statute.

This appeal arose from an incident in which a dog owned by defendant Susan Pasmowitz bit plaintiff Bonay Goldhagen, causing a severe facial injury. At the time of the incident, plaintiff was a groomer and kennel assistant employed at a pet care facility where defendant boarded her dogs. It is undisputed that defendant told plaintiff and the facility's manager that the dog "nipped" or "bit" her son and that she urged caution in handling the dog. Nevertheless, plaintiff contends that defendant concealed the fact that the dog had previously bitten defendant in the face and downplayed the risk that the dog presented.

Plaintiff asserted a claim based on the Dog Bite Statute, as well as common-law claims for absolute liability and negligence. Granting summary judgment in favor of defendant, the trial court relied on the Appellate

Division's decision in <u>Reynolds v. Lancaster County Prison</u>, 325 N.J. Super. 298, 323-26 (App. Div. 1999). In <u>Reynolds</u>, the Appellate Division recognized an exception to statutory liability under the Dog Bite Statute. Applying principles of primary assumption of the risk, the court held that when the plaintiff is an independent contractor who agrees to care for the defendant's dog, the plaintiff must show that the owner "purposefully or negligently conceal[ed] a particular known hazard" for liability to attach. <u>Id.</u> at 323-24 (quoting <u>Nelson v. Hall</u>, 211 Cal. Rptr. 668, 673 n.4 (Ct. App. 1985)). The trial court in this matter viewed <u>Reynolds</u> to bar plaintiff's claims, given her status as a professional employed by a kennel to care for the dog, and dismissed her claims.

Plaintiff appealed. The Appellate Division applied the independent contractor exception to the Dog Bite Statute under <u>Reynolds</u> and affirmed the grant of summary judgment.

We granted certification. We affirm in part and reverse in part the Appellate Division's judgment and remand the matter to the trial court for further proceedings. We disagree with the Appellate Division's holding in <u>Reynolds</u> that the Dog Bite Statute's strict liability standard does not apply to the claim of an independent contractor who agrees to care for a dog. <u>See</u> <u>ibid.</u> The statute's plain language reveals no legislative intent to recognize an

3

exception to strict liability under the Dog Bite Statute for any category of injured plaintiffs. See N.J.S.A. 4:19-16. Accordingly, we reverse the Appellate Division's judgment affirming the trial court's grant of summary judgment to defendant based on the Reynolds independent contractor exception.

We hold, however, that the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8, applies to plaintiff's strict liability claim under the Dog Bite Statute, and that plaintiff's status as a professional experienced in the care of dogs is relevant to an allocation of fault under the Act. Our decision reversing the grant of summary judgment based on Reynolds is without prejudice to the parties' right to file additional motions for summary judgment addressing plaintiff's statutory claim based on comparative negligence or other grounds. If the case proceeds to trial, defendant may present evidence regarding plaintiff's alleged negligence to the jury and seek an allocation of fault to plaintiff.

Turning to plaintiff's common-law claims, we agree with the trial court and the Appellate Division that genuine issues of material fact in the record warrant the denial of plaintiff's motion for partial summary judgment. Without prejudice to any further applications that the parties may present to the trial court regarding the common-law claims on remand, we affirm the

4

Appellate Division's decision denying partial summary judgment with respect to those claims.

I.

A.

We summarize the facts based on the summary judgment record presented to the trial court.

In 2008, defendant adopted a Rottweiler mix, then ten to twelve weeks old, and named him Louie. When fully grown, the dog weighed 120 to 130 pounds.

Defendant testified at her deposition that in 2011, as she attempted to remove a tick from Louie's ear, the dog bit her left cheek, leaving her with a laceration that required thirty stitches. The hospital that treated defendant contacted her municipality's animal control officer, who investigated the incident. Defendant also testified that the dog would get upset when his nails were clipped or he was approached from behind during visits to the veterinarian and that, as an adult dog, he was routinely muzzled and frequently sedated when he was at the veterinarian's office.

Defendant testified that in late June or early July 2015, she called Scott Winston, owner of Atlantic City Pet Care Kennel, to arrange for Louie and her other dog, Otis, to be boarded while she was on vacation. Defendant stated

5

that in that telephone call, Winston did not ask whether the dogs had been to a kennel before, and that he did not request -- and she did not volunteer -- any information about the behavior of her dogs.

On July 1 or 2, 2015, defendant dropped Louie and Otis off at Atlantic City Pet Care Kennel for boarding. Defendant testified that when she arrived at the boarding facility, she met with Winston, plaintiff, and another kennel employee. She stated that she told them that the dogs could be boarded in the same kennel but warned them that Louie should be muzzled, that they should avoid agitating him, and that they should not clip his nails or bathe him. Defendant testified that she told Winston, plaintiff, and the other employee that "you need to be leery of this dog." Defendant does not contend that she told plaintiff and the other staff members at the boarding facility that Louie had previously bitten her face.

Defendant testified that in response to those warnings, plaintiff was "dismissing" and "placating" her, and that she "actually hugged me, patted my back and said, don't worry, mommy, I've been around dogs, I know how to handle dogs." According to defendant, plaintiff "just was very dismissive to me, kind of laughing at me that I'm being overly dramatic regarding my dog."

At her deposition, plaintiff testified that defendant told her that "the dog doesn't like its nails cut" and that she had assured defendant that "we wouldn't

6

bother cutting its nails, no problem." Plaintiff also testified that defendant told her that the dog had previously "nipped" defendant's son, but later commented that "all I remember the owner saying was the dog bit my child, period."

When she dropped her dogs off at the boarding facility, defendant spoke with Winston to complete an intake form that would be displayed outside the kennel housing Louie and Otis. The intake form, a printed form with handwritten notations, indicated that defendant's dogs "Must eat separately" -- a notation underlined and emphasized with an asterisk -- that staff should "sit with Otis to eat," and that they "Must Muzzle for nail clippings." It also included a comment that Louie should be walked in the "backyard only!" Plaintiff admitted that she did not review the intake form for defendant's dogs until after Louie bit her.

Plaintiff described the dog-bite incident.[1] According to plaintiff, a kennel staff member told her that "the dogs needed to be given a worm pill and needed to be fed separately." She testified that "there was a problem in that because we were very busy, we only had one accommodation for the dogs, so

---

[1] The record is inconsistent with regard to the date of the dog-bite incident. Plaintiff testified that it occurred on the day that defendant dropped off her dogs at the boarding facility, which would be July 1 or July 2, 2015, but alleged in her complaint that it occurred on July 4, 2015.

in order to separate them somebody would have to go in and sit with one of them, which is mentioned on the front page [of the intake sheet]."

Plaintiff stated that because she had to give the dogs their pills, she went into the kennel, put the dogs' food bowls down, and put a pill in each dog's bowl. Plaintiff testified that she "sat down, looked at Louie, turned around, looked at Otis just to make sure they were getting their noses into their food, and I was sitting down next to Otis, and I was looking at them." She stated that "[w]hen I turned around to look at Louie, he was in my face biting my lip." Plaintiff stated that the dog also bit her left arm.

Winston drove plaintiff to a hospital emergency room. There, medical staff determined that plaintiff had a "significant and severe injury to the right upper lip, cupids bow, nasal base and pyramid, right lower lip, and right oral commissure," requiring "a prolonged repair." Plaintiff testified that she continues to experience numbness and pain that is "never going to go away."

The next day, Winston called defendant to report that Louie had bitten plaintiff. Defendant reported the incident to animal control. The dog was euthanized.

8

Plaintiff filed this action against defendant in the Law Division.[2] She

alleged that in the course of her employment, she "was bitten in the face by the

dog known as Louie while trying to have the dog swallow two medication pills

that were mixed in with dog food." Plaintiff further alleged that defendant was

"negligent and/or strictly liable for the actions of the dog in question and knew

or should have known that said dog may bite people." Defendant filed an

answer, asserting plaintiff's negligence as an affirmative defense.

After discovery, the parties cross-moved for summary judgment pursuant

to Rule 4:46-2. In defendant's summary judgment motion, she relied on the

Appellate Division's decision in Reynolds to argue that plaintiff, a

professional in the care of dogs, could not assert a claim under the Dog Bite

Statute. In her cross-motion, plaintiff sought partial summary judgment on the

question of liability with respect to her statutory and common-law claims.

The trial court found that defendant told plaintiff that Louie had bitten

her son, but defendant did not disclose that the dog had bitten her in the face.

The trial court concluded that defendant "knew the dog was vicious and prone

---

[2] Plaintiff initially named defendant's mother as a defendant, but later
dismissed the claims against her.

to biting people." It further observed that plaintiff did not follow the instructions on the intake form to feed Louie separately from Otis and to sit with Otis as he ate.

The trial court declined to find that defendant's failure to disclose the fact that the dog had bitten defendant in the face, requiring thirty stitches to close the wound, was sufficient to create a genuine issue of material fact for purposes of Rule 4:46-2. It concluded that plaintiff "had sufficient knowledge based upon the fact that Louie bit a child and that fact was revealed specifically by the defendant to the plaintiff."

The trial court found that plaintiff "was a long-time professional in this industry, in this field," and that in her employment at Atlantic City Pet Care Kennel, plaintiff had the necessary experience "to know and appreciate this dog's history and to take the necessary precautionary measures to safely address the needs of a dog, as well as her own." It viewed this case to be very similar to Reynolds and ruled that the Reynolds exception to liability under the Dog Bite Statute applied.

The trial court accordingly granted defendant's motion for summary judgment dismissing plaintiff's claims and denied plaintiff's cross-motion for partial summary judgment.

10

2.

Plaintiff appealed both of the trial court's decisions.  She contended that the assumption-of-risk exception to the Dog Bite Statute recognized in Reynolds should not apply, that her alleged negligence was irrelevant to her statutory claim, and that she was entitled to partial summary judgment on her common-law claims.

The Appellate Division acknowledged that defendant did not mention to plaintiff that Louie had bitten her, but stated that it was undisputed that defendant made plaintiff aware of the dog's aggressive nature.  The court concluded that the principles articulated in Reynolds governed this case, because plaintiff was a professional who agreed to care for defendant's dog, and was aware of the risk that any dog, regardless of its previous behavior, might bite an individual caring for it.  It held that a reasonable factfinder could reach only one conclusion:  that plaintiff had sufficient warning that the dog might bite her while she was caring for him.

The Appellate Division accordingly affirmed the trial court's grant of summary judgment to defendant and the court's denial of plaintiff's cross-motion for partial summary judgment on the issue of liability with respect to the common-law claims.

11

3.

We granted plaintiff's petition for certification. 244 N.J. 335 (2020). We also granted the application of the New Jersey Association for Justice to appear as amicus curiae.

II.

A.

Plaintiff urges us to hold that her claim meets the requirements of the Dog Bite Statute and to reject the exception to strict liability under that statute recognized by the Appellate Division in <u>Reynolds</u>. She contends that even if this Court recognizes the <u>Reynolds</u> exception, that exception should not apply to her, and that her alleged negligence is irrelevant to her strict liability claims. Plaintiff maintains that she has asserted viable causes of action for absolute liability and negligence, and that she is entitled to partial summary judgment on liability as to those claims.

B.

Defendant asserts that the Appellate Division properly affirmed the trial court's grant of summary judgment and its denial of plaintiff's cross-motion for partial summary judgment. She contends that by virtue of the <u>Reynolds</u> exception to the Dog Bite Statute for independent contractors, plaintiff's statutory claims are barred, and she urges the Court to reaffirm that exception

12

based on the principle of primary assumption of risk.  Defendant contends that plaintiff cannot establish her common-law claims because plaintiff was afforded sufficient warning of the risks posed by defendant's dog.

## C.

Relying on the plain language of the Dog Bite Statute, amicus curiae New Jersey Association for Justice contends that the Legislature did not intend to create an exception to strict liability for independent contractors, as it expressly did in other settings.  Amicus argues that judicial adoption of an independent contractor exception to the Dog Bite Statute would contravene public policy.  Amicus curiae concedes that plaintiff's training, experience, and skill in the handling of dogs are pertinent considerations under the Comparative Negligence Act, but asserts that a jury, not the court, should make the fact-based determination necessary to allocate fault pursuant to that statute.

## III.

### A.

We review the trial court's grant of summary judgment under the same standard that governs the court's determination.  <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016).  A court must grant summary judgment "if the pleadings, depositions, answers to

13

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995).

We review de novo the Appellate Division's construction of the Dog Bite Statute to include an exception, based on primary assumption of the risk, for independent contractors who agree to care for a dog. See Cashin v. Bello, 223 N.J. 328, 335 (2015).

B.

1.

Prior to the enactment of the Dog Bite Statute in 1933, New Jersey common law limited the liability of dog owners for biting incidents. DeRobertis v. Randazzo, 94 N.J. 144, 150-51 (1983). In the early common law, dog owners were liable for harm caused by their dogs to others "only if they had scienter; that is, the owners were liable only if they knew of the animal's dangerous or mischievous propensities." Id. at 150 (citing Emmons v. Stevane, 77 N.J.L. 570, 572 (E. & A. 1909)).

14

When it adopted the Dog Bite Statute, the Legislature expanded the liability of dog owners by imposing a standard of strict liability in dog-bite cases meeting the statutory terms.  Id. at 151.  The Statute provides that

> [t]he owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
>
> For the purpose of this section, a person is lawfully upon the private property of such owner when he is on the property in the performance of any duty imposed upon him by the laws of this state or the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner thereof.
>
> [N.J.S.A. 4:19-16.]

The Dog Bite Statute "provid[es] for the recovery of damages by persons bitten by dogs and creat[es] a liability of the owners of such dogs."  L. 1933, c. 427, § 1.  The Statute "changed the law theretofore existing in that it made liability absolute upon the happening of the act regardless of the former viciousness of the dog or of the owner's knowledge of such propensity."  Rowland v. Wunderlick, 113 N.J.L. 223, 226 (Sup. Ct. 1934).

Case law underscores the Legislature's intent to impose a strict liability standard on dog owners in cases governed by the Dog Bite Statute.  In Tanga

15

v. Tanga, the Appellate Division rejected the contention that a plaintiff in an action brought under the statute must prove the dog owner's negligence in order to recover. 94 N.J. Super. 5, 8-12 (App. Div. 1967). The court observed that "[a] mere reading of the statute denotes, at the least, legislative concern with the prior apparent barrier to recovery constituted by the dog owner's lack of knowledge (scienter) of any previous viciousness of the dog." Id. at 8. As the court noted, "[i]t would have been simple for the Legislature to have provided merely that thenceforth one injured by dog-bite should not be barred from recovery by reason of the owner's lack of knowledge of the dog's vicious propensities, had that been the sole intent." Id. at 12.

Later decisions similarly confirm that the Dog Bite Statute imposes strict liability, not a standard of negligence. See Robinson v. Vivirito, 217 N.J. 199, 214 (2014) ("The Legislature imposes strict liability on a dog owner because the owner has the authority and opportunity to control the behavior and location of the dog."); Pingaro v. Rossi, 322 N.J. Super. 494, 503 (App. Div. 1999) ("Satisfaction of the elements of the [Dog Bite Statute] imposes strict liability . . . ."); Mascola v. Mascola, 168 N.J. Super. 122, 125 (App Div. 1979) (holding that although the Dog Bite Statute has been "found to be somewhat ambiguous on its face," it "has been construed as imposing strict liability on owners for dog bites").

16

2.

N.J.S.A. 4:19-16's status as a strict liability statute does not mean that a defendant subject to that statute is barred from asserting the plaintiff's fault as a defense to the claim. To the contrary, a defendant may invoke the Comparative Negligence Act's allocation-of-fault statutory scheme in an action under the Dog Bite Statute.

The Comparative Negligence Act provides in part that

> [c]ontributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
>
> [N.J.S.A. 2A:15-5.1.]

Under the Comparative Negligence Act, the trier of fact first determines "[t]he amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages." N.J.S.A. 2A:15-5.2(a)(1). The trier of fact then assesses "[t]he extent, in the form of a percentage, of each party's negligence or fault" with the total of the percentages of negligence or fault allocated to the parties set at one hundred percent. Id. at (a)(2). Based on the trier of fact's

17

findings, the judge molds the judgment. Id. at (d). If the trier of fact allocates fifty-one percent or more of the fault to the plaintiff, the plaintiff does not recover damages. See N.J.S.A. 2A:15-5.1.

The Legislature expressly provided that the Comparative Negligence Act applies to "strict liability actions," N.J.S.A. 2A:15-5.2(a), a term defined to include, but not be "limited to, civil actions for damages based upon theories of strict liability, products liability, breach of warranty and like theories," id. at (c)(2). That includes a strict liability action under the Dog Bite Statute. Pingaro, 322 N.J. Super. at 505 (holding that the Comparative Negligence Act applies to a statutory claim under the Dog Bite Statute); Mahoney, Forte, & Turpan, N.J. Personal Injury Recovery § 3:1-3 (2021) (stating that the Comparative Negligence Act's "statutory definition of the term 'strict liability actions' is also broad enough to encompass any other claim sounding in strict or absolute liability, including those based upon a specific statute, such as . . . New Jersey's dog-bite law, [N.J.S.A.] 4:19-16").

Noting that in the product liability setting, a defendant asserting a strict liability claim must prove the plaintiff's "unreasonable and voluntary exposure to a known risk," this Court explained the impact of the Comparative Negligence Act on a cause of action brought under the Dog Bite Statute:

> [u]nder the comparative negligence statute, N.J.S.A. 2A:15-5.1, if the plaintiff's negligence was the primary

18

> cause of the injury, then recovery is barred. On the other hand, if it is found that his negligence is not greater than . . . the combined negligence of the persons against whom recovery is sought, he can recover with an appropriate reduction in the award.
>
> [DeRobertis, 94 N.J. at 156 (citing N.J.S.A. 2A:15-5.1).]

Accordingly, when a plaintiff pursues a strict liability claim under the Dog Bite Statute and the defendant asserts the plaintiff's negligence as a defense under the Comparative Negligence Act, the plaintiff's negligence may bar the statutory claim, or diminish her recovery of damages in that claim. Pingaro, 322 N.J. Super. at 504-05; see also N.J.S.A. 2A:15-5.1 to -5.3. The plaintiff's background, experience, knowledge of the dog's potential dangers, and conduct in handling the dog, among other considerations, may be relevant factors in that determination.

## C.

### 1.

Against that backdrop, we address the core issue raised by this appeal: whether the Appellate Division properly recognized in Reynolds an exception to the Dog Bite Statute for an independent contractor hired to care for a dog. See 325 N.J. Super. at 323-25.

The Appellate Division's decision in Reynolds arose from a dog's two separate attacks on the owner of a guard dog business and an independent

contractor hired to oversee the business' operations. Id. at 306-09. The Pennsylvania correctional facility that donated the dog to the business did not disclose that the dog had bitten five of the facility's employees during its training, and assured the business that the dog was friendly and had nipped someone only once. Id. at 309-10.

A jury found the guard dog business liable to the independent contractor for claims premised on the Dog Bite Statute and the common law. Id. at 321. The court acknowledged that there was no evidence that the business was aware of the dog's history. Id. at 323.

Addressing the Dog Bite Statute, the Appellate Division observed that "[i]n ordinary circumstances, when a dog is delivered for care to an independent contractor the owner is entitled to rely on the doctrine of primary assumption of the risk." Id. at 323. That doctrine "is an alternate expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed." Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 49 (1959). A defense based on primary assumption of the risk "has the same operative effect as a finding of as little as one percent contributory negligence before enactment of our Comparative Negligence Act -- it is a complete bar to recovery." Del Tufo v. Township of Old Bridge, 147 N.J. 90,

112-13 (1996); see also Mahoney, Forte, & Turpan, § 3:8-3 (describing the import of primary assumption of the risk when it is prescribed by statute).

In Reynolds, the Appellate Division applied the doctrine of primary assumption of the risk, holding that

> [w]hen a dog owner turns his dog over to an independent contractor who has agreed to care for the dog, the owner is not liable under the dog-bite statute when the dog bites the independent contractor unless the owner knew, or had reason to know, the dog was vicious and withheld that information. Similarly, under the doctrine of primary assumption of the risk . . . it would appear that an owner would not be liable under the statute to an independent contractor who undertakes the care of a domestic animal with knowledge that it is particularly dangerous.
>
> [Reynolds, 325 N.J. Super. at 324.]

The court reasoned that because there was no "evidence that the unusual hazard presented by [the dog] was known" to the guard dog business that owned the dog, the independent contractor's claim under the Dog Bite Statute against that business failed. Ibid. The court affirmed the determination of liability in the plaintiff's favor based on common-law negligence. Id. at 324-25.

2.

The doctrine of primary assumption of the risk applied in Reynolds diverges from the general strict liability rule set forth in N.J.S.A. 4:19-16,

which imposes liability for damages sustained from a dog bite on the owner "regardless of the former viciousness of [the] dog or the owner's knowledge of such viciousness." Reynolds thus represents a judicially created exception to the rule of strict liability set forth in the Dog Bite Statute. We consider whether the Appellate Division properly adopted that exception.

In that determination, we apply familiar principles of statutory construction. When we interpret a statute, our paramount goal is to "ascertain and effectuate the Legislature's intent." Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018) (quoting Cashin, 223 N.J. at 335). To that end, "we look first to the statute's actual language and ascribe to its words their ordinary meaning." Ibid. (citing Mason v. City of Hoboken, 196 N.J. 51, 68 (2008)). If the statute's meaning is clear, "we need look no further." Mason, 196 N.J. at 68.

The plain language of the Dog Bite Statute reveals the Legislature's intent. That language imposes strict liability on "[t]he owner of any dog" that bites a "person" who is, at the time of the dog bite, in a public place or lawfully in a private place. N.J.S.A. 4:19-16. In the statute, the term "person" is unmodified by any limiting term. Ibid.; see also N.J.S.A. 1:1-2 (defining the statutory term, "person"). Nothing in the provision suggests that the Legislature intended to exclude any category of dog owners from statutory

22

liability, let alone any indication that claims asserted by independent contractors who have agreed to care for a dog are exempt from the statute's general rule.  See N.J.S.A. 4:19-16.

In that regard, the Dog Bite Statute stands in stark contrast to statutes that govern liability for injuries suffered while participating in inherently dangerous activities and that incorporate assumption of the risk in the statutory terms.  See N.J.S.A. 5:13-5 to -6 (provisions of a statute addressing the duties of ski facility operators and skiers, assumption of the risk, and comparative negligence); N.J.S.A. 5:14-5 to -7 (provisions of the Roller Skating Rink Safety and Fair Liability Act addressing duties of roller skating facility operators and roller skaters, assumption of the risk, and comparative negligence); N.J.S.A. 5:15-3, -5 (provisions of a statute addressing assumption of the risk as applied to claims arising from "equine animal activities").

"When 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'"  In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 470 (2013) (quoting Higgins v. Pascack Valley Hosp., 185 N.J. 404, 419 (1999)); accord State v. Drury, 190 N.J. 197, 215 (2007).  Here, the Legislature's choice not to incorporate assumption of the risk into the Dog Bite Statute for independent

23

contractors -- or any other category of plaintiffs -- signals its intent not to limit the statute's strict liability rule. See N.J.S.A. 4:19-16.[3]

3.

Accordingly, we do not concur with the Appellate Division's determination in Reynolds that, under the Dog Bite Statute, a dog owner is not liable to an independent contractor who has agreed to care for the dog unless the owner knew or had reason to know that the dog was vicious and withheld that information. See Reynolds, 325 N.J. Super. at 324. We reverse the Appellate Division's decision, premised on the Reynolds exception, affirming the trial court's grant of summary judgment.

Our determination does not mean that plaintiff's status as a professional working in a dog boarding facility has no impact on her claim under the Dog Bite Statute. Defendant may raise plaintiff's experience in working with dogs, the warnings that she was provided, her conduct in handling the dog, and other

---

[3] The Legislature, of course, may decide to amend the Dog Bite Statute to limit dog owners' liability to certain categories of plaintiffs, or bar such liability entirely. See, e.g., Colo. Rev. Stat. § 13-21-124(5)(e) (excluding "veterinary health care worker[s]," "dog groomer[s], and others" from dog-bite liability); see also Ariz. Rev. Stat. Ann. § 11-1025 (barring dog bite claims against "any governmental agency using a dog in military or police work" if the bite occurred during the execution of law enforcement duties); Fla. Stat. § 767.04 (precluding liability of dog owner if "the owner had displayed in a prominent place on his or her premises a sign easily readable including the words 'Bad Dog'"); S.C. Code Ann. § 47-3-110(B)(1) and (B)(2) (listing exceptions to dog owners' liability for injury).

facts relevant to comparative negligence, and may argue in a summary judgment motion that plaintiff's comparative fault warrants dismissal of her statutory claim. See N.J.S.A. 2A:15-5.1 to -5.3. If the case proceeds to trial, defendant may present to the jury evidence relating to plaintiff's professional status, knowledge, experience, and conduct and may seek an allocation of fault to plaintiff pursuant to the Comparative Negligence Act.

### D.

Finally, we consider plaintiff's cross-motion for partial summary judgment, in which she sought summary judgment in her favor with respect to liability on her Dog Bite Statute claim and her common-law claims for absolute liability and negligence.[4]

We agree with the trial court that genuine issues of material fact preclude a grant of partial summary judgment to plaintiff as to liability on her claim under the Dog Bite Statute. See R. 4:46-2. Plaintiff is correct that based on the record before the Court, it appears that defendant's status as the dog's owner is undisputed, thus satisfying an element of N.J.S.A. 4:19-16. There

---

[4] The record before the Court regarding plaintiff's cross-motion for partial summary judgment is sparse. As she did before the trial court and in her brief to the Appellate Division, plaintiff addressed her cross-motion in her petition for certification only briefly; she stated that she had proven all the elements of her Dog Bite Statute claim and her claim for common-law absolute liability, that defendant's knowledge of her dog's "dangerous propensities" was undisputed, and that it was unnecessary to "submit the question to the jury."

25

remain significant factual disputes, however, regarding the information that defendant provided to plaintiff and her employer regarding the risk posed by the dog, plaintiff's conduct before and during the incident, and other relevant issues. Defendant's assertion of a defense based on the Comparative Negligence Act and her presentation of prima facie evidence supporting that defense preclude the entry of partial summary judgment on liability based on the Dog Bite Statute. We hold that the trial court properly denied plaintiff's motion for partial summary judgment with respect to the Dog Bite Statute claim.

Plaintiff's motion for partial summary judgment also addressed her common-law claims for absolute liability and negligence. We agree with the trial court that genuine issues of material fact regarding defendant's communications with plaintiff and her employer, as well as the circumstances of the dog-bite incident, preclude the entry of partial summary judgment on liability with respect to the common-law claims. See R. 4:46-2. Our ruling, however, does not preclude plaintiff from filing a motion for partial summary judgment regarding her common-law claims at a later stage.

To provide guidance to the trial court on remand, we briefly address the relationship between plaintiff's statutory claim under the Dog Bite Act and her

common-law claims for absolute liability and negligence.  As the Court

explained in DeRobertis,

> [i]f a plaintiff is unable to recover under the [Dog Bite
> Statute] for failure to prove any of [the statute's] three
> elements, he still may have a cause of action based on
> common-law principles.  If a plaintiff proves scienter,
> a dog-owner is absolutely liable for injuries caused by
> the dangerous characteristic of the dog, unless the
> owner can prove that the plaintiff was contributorily
> negligent.  In that event, the determination of liability
> is governed by the Comparative Negligence Act.
> N.J.S.A. 2A:15-5.1.  If, on the other hand, the plaintiff
> is unable to prove that the owner knew or should have
> known of the dog's dangerous characteristics, then the
> owner is liable only if the plaintiff is able to prove that
> the owner acted negligently in keeping the dog.  Once
> again, the negligence of the plaintiff would be relevant
> to determining the liability of the owner.  Finally, the
> owner of an abnormally dangerous dog owes a duty of
> ordinary care to an infant trespasser.
>
> [DeRobertis, 94 N.J. at 158.][5]

---

[5]  The Appellate Division's decision in Jannuzzelli v. Wilkens provides an
example of a setting in which a plaintiff could not prove a claim under the Dog
Bite Statute, but could assert a common-law claim for absolute liability subject
in part to the Comparative Negligence Act.  158 N.J. Super. 36, 41-42 (App.
Div. 1978).  There, the trial evidence suggested that the infant plaintiff's
injuries resulted from the dog jumping up on the child and scratching her, not
from a dog bite.  Id. at 39-41.  The court observed that "[n]otwithstanding
N.J.S.A. 4:19-16, a common law cause of action remains in which scienter
must be proved to establish liability when a dog injures a person, but does not
inflict a bite."  Id. at 41 (citing Hayes v. Mongiovi, 121 N.J. Super. 272, 274-
75 (Cnty. Ct. 1972)).  Although the appellate court deemed the child's
contributory negligence to be irrelevant, it remanded for consideration of the
contributory negligence of the child's parents, which was pertinent to their per
quod claim.  Id. at 47.

The trial court should apply the principles stated in <u>DeRobertis</u> when it determines plaintiff's statutory and common-law claims, and decides which, if any, of those claims should be presented to the jury. If the jury considers either common-law claim, and defendant presents evidence of plaintiff's negligence, the jury should allocate fault pursuant to N.J.S.A. 2A:15-5.2 and -5.3 with respect to those claims.

## IV.

We affirm in part and reverse in part the judgment of the Appellate Division. We remand this matter to the trial court for determination of any further summary judgment motions filed by either party, and for trial with respect to any issues not resolved by summary judgment.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.